**In re FRONTIER AIRLINES, INC., Debtors.**

**FRONTIER AIRLINES, INC., Plaintiff,**

**v.**

**FRONTIER AIRLINES, INC. RETIREMENT PLAN FOR PILOTS PENSION BOARD, et al., Defendants.**

**TIDLER GROUP, Third Party Plaintiffs,**

**v.**

**John OSTERBERG, et al., Third Party Defendants.**

Bankruptcy No. 86 B 8021 E.
Adv. No. 87 E 477.

United States Bankruptcy Court, D. Colorado.

March 28, 1988.

Carl A. Eklund, Richard E. Stoddard, Christian C. Onsager, Roath & Brega, P.C., Denver, Colo., for Frontier Airlines, Inc.

Bruce R. Muir, Lentz, Evans & King, P.C., Ira M. Long, Jr., Denver, Colo., for Frontier Airlines, Inc. Retirement Plan for Pilots Pension Bd.

Timothy J. Parsons, Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., for 202 Plan Participant defendants.

David W. Furgason, Gregory A. Rueg-segger, Welborn, Dufford, Brown & Tooley, Denver, Colo., for Airline Pilots Ass'n, Intern.

Cynthia C. Benson, Elizabeth J. Greenberg, Sherman & Howard, John E. Bush, General Counsel and Secretary, Denver, Colo., for Central Bank of Denver.

## ORDER ON MOTION FOR ENTRY OF DEFAULT JUDGMENT

CHARLES E. MATHESON, Chief Judge.

This matter came before the Court on the Plaintiff's motion for the entry of a default judgment against certain of the defendants in this case who have been served with process but have not answered or otherwise responded to the complaint. Arguments were heard on this matter on behalf of the Plaintiff and various objecting defendants and it was taken under advisement in order to render a considered opinion thereon. Some background is necessary.

The files in this Chapter 11 case reflect that the case was filed in the late summer of 1986. At the time it was filed the Debtor, Frontier Airlines, Inc. ("Frontier") had

already shut down and had ceased operations.

In the early fall of 1986, negotiations were conducted leading to a sale of substantially all of Frontier's assets to Continental Airlines, Inc. ("Continental"). As part of that transaction an agreement was made with those unions which represented various factions of Frontier's employees for the purpose of minimizing potential ongoing disputes with those employees. The agreements among Frontier, Continental and the unions were approved by this Court as part of its order which was entered authorizing the sale of Frontier's assets to Continental.

It was recognized by all that the sale of Frontier's assets to Continental meant that Frontier, during the course of the Chapter 11 proceeding, would be liquidating its remaining assets and proposing a plan for the distribution thereof. Since Frontier would not recommence operations as an airline and would not have ongoing employees for such purpose, it was contemplated that the Frontier Pension Plan ("Plan") for its pilots would be terminated. The parties anticipated that, after providing for the vested benefits under the Plan, there could remain excess funds representing overfunded benefits which would revert to Frontier. Pursuant to the agreement with the pilots' union, Frontier agreed that instead of taking 100% of any excess funding, such excess funding, to the extent it existed, would be allocated 50% to Frontier and 50% to the Plan participants.

Frontier has asserted that it is now necessary to amend the Plan in order to effect its termination and the distribution of the excess funding. Frontier has proposed a form of amendment which includes procedures for determining the amount of benefits to be provided which, in turn, determines the amount of the excess funding to be allocated between Frontier and the Plan participants. Frontier commenced the instant case joining, among others, all Plan participants. The complaint prays for a declaratory judgment approving the proposed amendment, approving the manner by which benefits are to be distributed

under the amended plan, allocating certain excess costs of lump sum distributions on the employees who will receive them, and further absolving the Pension Board which administers the Plan from liability for distributing funds pursuant to the proposed amendment.

Service on the Defendants in this case was effected pursuant to Bankruptcy Rule 7004 and proof of service has been filed. Approximately four hundred and fifty (450) defendants have not responded after service of process, and the Plaintiff has now filed a motion for the entry of a default judgment against this group of non-responding employees. It is argued by the Plaintiff that the entry of such an order would enable funds to be disbursed immediately to the defaulting defendants with their benefits to be calculated pursuant to the provisions of the amended plan which is the subject of the pending complaint.

The determination of the extent of the interests of the Plan Participants and the resulting fixing of the amount of the excess funding are calculations which involve a number of actuarial assumptions. Not surprisingly, the Plaintiff's proposal has not met with uniform acceptance. While a number of the Plan Participants have, for whatever reason, not responded to the complaint and are in default, a number have also obtained counsel and have vigorously responded taking issue with the Plaintiff's proposal. They have placed the complaint in issue and they have also filed objections to the Plaintiff's present motion for default judgment.

## MEMORANDUM

I. JURISDICTION OF THE BANKRUPTCY COURT TO HEAR "ERISA" MATTERS UNDER 28 U.S.C. §§ 151 AND 157.

A threshold jurisdictional issue has been raised by certain of the defendants which must first be addressed. Those defendants argue that the complaint seeks relief involving the application of the Employee Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq.*, ("ERISA") which, pursuant to the provisions of 29 U.S.C.

§ 1132(e)(1), can only be heard and granted by the United States District Court. Thus, they urge dismissal of the within action.

This Court derives jurisdiction pursuant to the provisions of 28 U.S.C. § 1334 and 28 U.S.C. § 157. Section 1334 vests in the District Court non-exclusive jurisdiction over all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. Section 157(a) provides that the District Court may refer to the Bankruptcy Court "any or all proceedings arising under Title 11 or arising in or related to a case under Title 11." In Colorado, the District Court has entered its General Procedural Order No. 1984–3, pursuant to which all such proceedings referred to in Section 157(a) are automatically referred to the bankruptcy judges of this District.

While stated in various ways, the general rule is that a proceeding is considered to be "related to" a bankruptcy case if the resolution thereof can have an effect on the debtor's estate. *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 385 (3rd Cir. 1987), *citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984). The resolution of the issues in the instant case will determine the extent to which the Plaintiff receives funds by reason of the termination of the pension plan. The dollars to be received by Frontier may be significant. Also, the resolution of the issues in this case will assist in the orderly and prompt administration of this Debtor's estate. *See Brock*, 829 F.2d at 385–86. Clearly the case is "related to" this bankruptcy case and this Court has jurisdiction to hear this matter as a non-core matter pursuant to 28 U.S.C. § 157(c)(1), unless the Court's jurisdiction is preempted by the jurisdictional provisions of ERISA. *See* 29 U.S.C. § 1132(e).

■ The bankruptcy court is not a free standing court. It is a "unit" of the district court. 28 U.S.C. § 151; *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As noted, the court's authority to hear "related to" matters comes pursuant to the order of reference under 28 U.S.C. § 157(a). In non-core

matters this Court can hear, but cannot enter final judgment in, such matters except with the consent of the parties. 28 U.S.C. § 157(c). Absent consent of the parties, the court must hear the matter and enter proposed findings and recommended conclusions of law which must be submitted to the district court. The district court then enters judgment after considering the bankruptcy judge's proposed findings and conclusions and after a *de novo* review of matters to which a party has made timely and specific objection, as specified by 28 U.S.C. § 157(c) and Bankruptcy Rule 5011.

Other courts have considered the potential conflict between the jurisdictional provisions of 28 U.S.C. § 1334 and the jurisdictional provisions of other acts vesting exclusive jurisdiction of certain matters in other federal courts. Thus, in *Brock, supra,* the Third Circuit was concerned with the conflict between the OSHA provisions under 29 U.S.C. § 660(b), which give exclusive jurisdiction to the federal court of appeals, and the provisions of 28 U.S.C. § 1334. The court recognized that Section 1334 impacted on the exclusive jurisdiction provisions of Section 660(b) when it stated:

Although section 1334(b) alters the effect of the jurisdictional grant of section 660(b) by expressly rendering it non-exclusive, it does not divest us of our jurisdiction. Rather, *the effect of 28 U.S.C. § 1334(b)* is to grant the district court overseeing the bankruptcy *concurrent original jurisdiction.* We thus share concurrent original jurisdiction with the district court overseeing the petitioner's bankruptcy.... *Brock* 829 F.2d at 385–86 (emphasis supplied).

A similar issue has arisen in admiralty matters when the debtor is a shipping company or owns an interest in a ship. This issue arose in the case of *United States v. LeBouf Bros. Towing Co., Inc.*, 45 B.R. 887 (E.D.La.1985). In *LeBouf* the United States commenced its *in rem* action against four vessels owned by the defendant to foreclose on a ship mortgage. Thereafter, pending sale of the vessels, the defendant filed bankruptcy. The United

States then argued that the district court should withdraw the order of reference and administer the bankruptcy case in the district court. In declining to withdraw the reference, the district court stated:

> The United States argues that cause to remove LeBouf's boats from the bankruptcy proceeding is demonstrated here by the conflict in jurisdiction over the ships between this court and the bankruptcy court. This argument suggests a misunderstanding on the part of the government as to the source of the bankruptcy court's jurisdictional authority. A conflict of jurisdiction presupposes two independent jurisdictional authorities. Under the 1984 Amendments, the district courts "have original and exclusive jurisdiction of all cases under title 11" and the bankruptcy court is merely a unit of the district court exercising that court's authority pursuant to 28 U.S.C. §§ 151 and 157. *See* 1984 Amendments, § 104(a) (to be codified as 28 U.S.C. § 1334(a)). Consequently, *the bankruptcy court has no jurisdictional authority independent of this court; hence, there is no conflict of jurisdiction in this case. LeBouf,* 45 B.R. at 891 (emphasis supplied).

Similarly, in an admiralty context, the Fifth Circuit Court of Appeals, in the case of *In re Modern Boats, Inc.,* 775 F.2d 619 (5th Cir.1985) stated:

> The admiralty court's previous acquisition of *in rem* jurisdiction thus did not defeat the bankruptcy court's jurisdiction in this case. On the contrary, the petition for reorganization withdrew jurisdiction from the admiralty court and lodged it exclusively in the district court—"the court where the title 11 proceeding was pending". The bankruptcy court inherited that jurisdiction when the district referred the case to it under 28 U.S.C. § 157(a). *Modern Boats,* 775 F.2d at 620.

■ To paraphrase Gertrude Stein, the foregoing cases establish that a district court is a district court is a district court. This is true whether the district court is sitting in its traditional role or operating by and through a "unit" thereof in the form of the bankruptcy court. The order of reference is sufficient to vest in this Court the jurisdiction and authority to hear the ERISA issues as a part of the "related to" proceeding herein and to enter proposed findings of fact and conclusions of law for submission to the District Court. The question remains whether this Court should enter a default against the nonresponding defendants and recommend to the District Court the entry of a final judgment against them.

## II. PROPRIETY OF ENTRY OF DEFAULT, AS PROPOSED, AGAINST NONRESPONDING DEFENDANTS IN LIGHT OF 29 U.S.C. § 1053.

The Plaintiff argues that the motivation for a prompt entry of default judgment is to enable the forthwith distribution of monies to those who have chosen not to contest the relief sought in the complaint. The tacit suggestion is that those who have not responded have made a conscious choice and desire monies now pursuant to the allocation formula under the proposed amendment to the Plan rather than, perhaps, more dollars later. Thus, it is argued, the Court should honor such elections and enter the default judgment.

The Court is not as sanguine as the Plaintiff as concerns the meaning to be ascribed to the defendants' failure to respond. To be sure, there are undoubtedly some who did make a conscious choice to accept the benefits proposed via the complaint in this proceeding. Others, however, may simply not have had the heart to fight or the dollars to retain counsel or are geographically disadvantaged or are not sufficiently sophisticated to understand the impact on them of their failure to respond.

Entry of a default judgment as requested would have the effect of fixing the benefits for the nonresponding defendants. It also would have the effect of maximizing the monies available to the Plaintiff by increasing the amount of funds which would be allocated to the pool of excess pension plan dollars.

The defendants who have objected argue that the Plaintiff's proposed Plan amendment does violence to the rights of the employees. They infer that should their views prevail, perhaps all of the monies in the Plan will go to the Plan participants and none to the Plaintiff. If these defendants prevail, the distributions to the Plan participants will no doubt increase. Entering default now as to the nonresponding defendants will deprive them of the right to participate in any such increase and will result in two separate groups of employees who have the same relative rights and interests receiving different treatment under the Plan. Such a result, even if legally permissible, is not palatable.

 ERISA contemplates equality of treatment among the covered employees of equal employment status. That statute further requires that benefits which have vested in the employees must be non-forfeitable. 29 U.S.C. § 1053(a). Such rights cannot be taken away by a Plan amendment. *Terpinas v. Seafarer's International Union of North America, Pacific District,* 722 F.2d 1445 (9th Cir.1984).

The order, which the Plaintiff has proposed, states, in pertinent part at paragraph 1.(c) thereof:

1.(c) Upon acceptance of the distribution upon termination of the Plan, all Nonresponding pilots ... shall be estopped from asserting any claims ... as to the termination of the Amended Plan and method of calculating distributions so received.

If the proposed order and judgment are entered and funds are disbursed pursuant thereto, the nonresponding defendants would be estopped to argue any claim of right to greater benefits which might accrue if the appearing defendants prevail in their assertion that the proposed amendments impermissibly reduce vested benefits. Such a result is contrary to the spirit and intent, if not expressed provisions, of the law.

 Nothing in this order should be construed as an indication by the Court that the Plaintiff's amendment does not comply with the law or that the defendants should prevail on the merits in this case. That issue is not now addressed. The Court merely recognizes that the present entry of final judgment against certain of the defendants could result in former Frontier employees who have the same relative status receiving inconsistent distributions under the Plan. This is a result which the Court is not willing to condone.

There is nothing to bar entry of an order of default as to nonresponding defendants. Those who have not appeared should not, absent good cause, be allowed to answer and appear in the ongoing proceedings. They should, however, be left in the case and be mutually bound by whatever final judgment is entered. Accordingly,

IT IS THEREFORE ORDERED that the nonresponding defendants who have not filed answers or otherwise responded to the complaint served upon them in this proceeding are hereby declared to be in default; and

IT IS FURTHER ORDERED that except for the entry of default, the motion of the Plaintiff herein for the entry of judgment against said defaulting parties is denied.