*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0088P (6th Cir.)
File Name: 02a0088p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHRISTOPHER BROWNING;
JEFFREY RADEMAN;
NATIONWISE AUTOMOTIVE
INC. EMPLOYEE STOCK
OWNERSHIP PLAN; and NW
LIQUIDATING, INC.,
       *Plaintiffs-Appellants,*

       *v.*

SAUL LEVY,
           *Defendant,*

SQUIRE, SANDERS &
DEMPSEY,
       *Defendant-Appellee.*

No. 00-4275

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 95-00824—George C. Smith, District Judge.

Argued: January 31, 2002

Decided and Filed: March 12, 2002

Before:  MARTIN, Chief Circuit Judge; GILMAN, Circuit
Judge; EDMUNDS, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**    Gary D. Greenwald, SHAYNE &
GREENWALD CO., LPA, Columbus, Ohio, for Appellants.
Steven W. Tigges, ZEIGER & CARPENTER, Columbus,
Ohio, for Appellee.   **ON BRIEF:** Gary D. Greenwald, Anne
Marie La Bue, SHAYNE & GREENWALD CO., LPA,
Columbus, Ohio, for Appellants.  Steven W. Tigges, John W.
Zeiger, Stuart G. Parsell, ZEIGER & CARPENTER,
Columbus, Ohio, for Appellee.

_____

**OPINION**

_____

   RONALD LEE GILMAN, Circuit Judge.   Nationwise
Automotive, Inc.'s Employee Stock Ownership Plan (ESOP),
ESOP participants Christopher Browning and Jeffrey
Rademan, and NW Liquidating, Inc. (NW), the successor to
Nationwise, appeal the district court's grant of summary
judgment in favor of the law firm of Squire, Sanders, &
Dempsey (SSD).   The ESOP, Browning, and Rademan
claimed that SSD breached its fiduciary duties and engaged in
prohibited transactions under the Employment Retirement
Income Security Act (ERISA).  NW, on the other hand, sued
SSD for legal malpractice and other breaches of duty under
Ohio law.   All of these claims arise from SSD's
representation of Saul Levy, Nationwise's majority
shareholder and Chairman of the Board, before Nationwise
filed for reorganization under Chapter 11 of the Bankruptcy
Code.

_____

[*] The Honorable Nancy G. Edmunds, United States District Judge for
the Eastern District of Michigan, sitting by designation.

The plaintiffs argue that the district court erred in holding, first with respect to the ESOP and NW, and then in a later ruling with respect to Browning and Rademan, that their claims against SSD were barred by res judicata and judicial estoppel. These rulings were based on the plaintiffs' failure to raise or reserve their claims against SSD before the 1996 confirmation of Nationwise's Plan of Reorganization. For the reasons set forth below, we **AFFIRM** the judgments of the district court.

## I. BACKGROUND

This case arises out of a 1992 dispute between the ESOP and Saul Levy over control of the corporation. Nationwise is an Ohio corporation engaged in the retail sale of auto parts. Levy owned the majority of the company's voting stock in 1992, based in part upon shares that were allocated to him pursuant to a 1986 "Subscription Agreement." Under the Agreement, Levy was granted $9.1 million in Nationwise shares without having to make immediate payment. Nationwise, however, could "call" the subscription upon demand and require Levy to pay the purchase price for the subscribed shares. But Levy could terminate his obligations under the Agreement at any time, so long as doing so would not leave Nationwise without adequate funds to operate effectively. Without the shares that Levy owned pursuant to the Subscription Agreement, the ESOP would have had majority control of the corporation.

The dispute in question arose from a difference of opinion between Levy and the ESOP Trustees over what steps should be taken to remedy the serious financial difficulties facing Nationwise in 1991 and 1992. Kent Brown, James Leggett, and Lee Tenenbaum were the ESOP Trustees. Brown was also a member of Nationwise's Board of Directors, along with Levy and Edward A. Schrag, who was then Nationwise's corporate counsel and a partner in the law firm of Vorys, Sater, Seymour & Pease.

On January 7, 1992, the three ESOP Trustees and Nationwise's Board of Directors proposed an "Organization

and Expense Reduction Plan" that recommended eliminating certain employee positions, selling the corporate jet, and restricting travel and entertainment expenses. Levy, in an apparent change of position, rejected the Expense Reduction Plan on January 17, 1992. Acting without authorization from the Board of Directors, Levy attempted to stop implementation of the Plan by firing Brown, suspending Leggett, assuming the positions of President and Chief Operating Officer in addition to those of Chairman of the Board and Chief Executive Officer, and purporting to rescind the Expense Reduction Plan.

In response, the ESOP Trustees, acting upon the advice of their lawyer, Elizabeth B. Mayo, a partner in the law firm of Porter, Wright, Morris & Arthur, recommended that the Board of Directors call Levy's Subscription Agreement in order to raise $9.1 million in needed cash for the corporation and to implement the Expense Reduction Plan. A majority of the Board of Directors (Brown and Schrag) voted on January 20, 1992 to make the cash call upon Levy pursuant to the Subscription Agreement. When Levy was unable to pay, the majority of the Board considered the Subscription Agreement null and void, and viewed the ESOP, rather than Levy, as having voting control of Nationwise.

Soon thereafter, a dispute arose between Levy and the majority of the Board (Brown and Schrag), who then caused Nationwise to sue Levy in state court. The complaint alleged fraud in connection with the Subscription Agreement. Levy was represented in this litigation by SSD, Nationwise was represented by Schrag, and the ESOP was represented by Mayo. In February of 1992, SSD, as counsel for Levy, repeatedly requested that the ESOP Trustees approve a settlement agreement that would involve a call on Levy in the reduced amount of $1.6 million and would include a complete release of the ESOP's potential claims against him.

On March 18, 1992, the Board of Directors unanimously voted to partially rescind the call, requiring Levy to pay for only $1.6 million worth of the shares he owned under the

unit of the district court, and therefore able to share in the district courts' exclusive jurisdiction over ERISA claims, the bankruptcy court has no less power to hear ERISA claims than it does any other non-core bankruptcy proceeding. *Frontier Airlines*, 84 B.R. at 727-28. Under *Sanders Confectionery*, therefore, the ESOP could have asserted its ERISA claims against SSD in the bankruptcy court, and those claims could have been referred to the district court. This leads to the conclusion that the ESOP's failure to raise its claims against SSD in the bankruptcy court has a res judicata effect with respect to those claims. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991) (holding that the confirmation of a plan of reorganization constitutes a final judgment in a bankruptcy proceeding with regard to claims that could have been heard in the proceeding).

## III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgments of the district court.

breach of fiduciary duty under ERISA, 29 U.S.C. § 1109, and (2) entering, as a "party in interest," into prohibited transactions with a plan under ERISA, 29 U.S.C. § 1106, the ESOP argues that "because the exclusive grant of jurisdiction over ERISA claims to the federal district courts stripped the bankruptcy court of jurisdiction to hear such claims, the ESOP Plaintiffs could not have brought their ERISA claims against SSD in the Bankruptcy Litigation."

Indeed, the statutory grant of exclusive jurisdiction over ERISA claims in federal district courts divests other courts of the power to adjudicate them. *Thoikol Corp. v. Dept. of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 379 (6th Cir. 1993) (holding that state courts could not adjudicate ERISA claims because Congress granted exclusive jurisdiction over them to the federal district courts). "It is well settled that . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Research & Action Ctr. v. FCC,* 750 F.2d 70, 77 (D.C. Cir. 1984). Claims brought by an ESOP, alleging that an ERISA fiduciary has breached its fiduciary duties, or that a "party in interest" has engaged in certain prohibited transactions with the plan, fall under the statute's exclusive-jurisdiction provision. 29 U.S.C. § 1132(e)(1) (providing for exclusive jurisdiction in the federal district courts over certain types of claims arising under the ERISA statute); 29 U.S.C. § 1109(a) (creating liability for breach of fiduciary duty for "[a]ny person who is a fiduciary with respect to a plan. . .") and 29 U.S.C. § 1106 (creating liability for a "party in interest" if they engage in certain prohibited transactions with the plan).

But the exclusive jurisdiction of the district courts over certain ERISA claims does not preclude such claims from being brought in bankruptcy proceedings, because the "bankruptcy court is not a free standing court," but rather "a 'unit' of the district court." *In re Frontier Airlines, Inc.*, 84 B.R. 724, 727 (Bankr. Colo. 1988) (holding that the bankruptcy court had jurisdiction to hear claims arising under ERISA); 28 U.S.C. § 151. Because the bankruptcy court is a

Subscription Agreement. The Board also approved a new employment agreement for Brown as President of Nationwise. Tenenbaum and Leggett then resigned as ESOP Trustees, leaving Brown as the sole remaining Trustee.

Finally, on April 16, 1992, the ESOP, Nationwise, Levy, and the other affected parties entered into a settlement agreement and release. Under the terms of the Settlement Agreement, Levy paid Nationwise approximately $1.6 million and remained the majority shareholder. The state court entered a final judgment approving the settlement on May 27, 1992.

Nationwise filed for Chapter 11 bankruptcy protection on August 18, 1995. Five days later, Christopher Browning and Jeffrey Rademan, both of whom were Nationwise employees and participants in the ESOP, brought suit against Levy. Their complaint alleged that the 1992 settlement was procured by fraud, and they asked the district court to set aside the settlement and allow the 1992 suit to be relitigated.

In 1997, the ESOP and NW intervened as plaintiffs in Browning's and Rademan's suit, joining SSD as an additional defendant. Browning and Rademan then amended their complaint to also sue SSD. The ESOP alleged that in procuring the 1992 settlement, SSD breached its fiduciary duties under ERISA, 29 U.S.C. §§ 1001-1461. NW alleged that SSD committed legal malpractice and other breaches of duty under Ohio law. According to the ESOP and NW, SSD's wrongdoing "remained latent until mid-1997, when discovery conducted in the instant litigation revealed the depth and character of SSD's involvement in forcing acceptance of the settlement agreement upon Nationwise and ESOP."

The ESOP and NW specifically contend that in February and March of 1992, SSD coerced Schrag and the Vorys firm into approving the proposed settlement by threatening to sue them on behalf of Levy for malpractice in connection with Schrag's drafting of, and advice to Levy regarding, the Subscription Agreement. According to the ESOP and NW,

SSD later pressured the ESOP Trustees to approve the settlement and to persuade Mayo to support the proposed settlement by, among other things, offering Brown an enhanced employment package. SSD also allegedly induced Leggett and Tenenbaum to resign as trustees by falsely telling them that an independent successor trustee had been arranged to replace them, when in fact SSD was lining up Brown to serve as the sole ESOP trustee on an interim basis until after the settlement was concluded.

The plaintiffs contend that as a result of the settlement, the value of the shares owned by the ESOP was diluted and that Nationwise received substantially less cash than it needed to remain financially viable. According to the plaintiffs, the bankruptcy of Nationwise resulted in part from the financial hardships caused by the fraudulently induced, and therefore void, settlement and release.

Upon the filing of the Chapter 11 bankruptcy petition, Nationwise began to operate as a debtor-in-possession. Nationwise changed its name to NW Liquidating, Inc. following confirmation of the Plan of Reorganization in 1996. NW then succeeded Nationwise, functioning as the debtor-in-possession of the bankruptcy estate and presiding over the liquidation of the corporation's assets with all the powers and duties of a trustee.

At the time Nationwise filed its Chapter 11 petition, and during the first month of the bankruptcy proceeding, Nationwise was represented solely by SSD. The law firm of Arter & Hadden replaced SSD on September 26, 1995 as Nationwise's general counsel from that point forward, with SSD continuing to represent Nationwise as special counsel only.

Star Bank Trust Financial Services (Star Bank) entered its appearance on August 25, 1995, one week after Nationwise filed its petition, for the purpose of representing the ESOP in the bankruptcy proceeding. In September of 1995, Star Bank filed documents stating that it "is a party in interest herein as the Trustee of the Employee Stock Ownership Plan," and "is

establishes the ESOP's substantial participation in the bankruptcy proceeding.

### 2. *The district court did not err in concluding that the ESOP should have raised or reserved its claims in the Nationwise bankruptcy proceeding*

As explained above in Part II.B.2.c., a claim must be raised in a prior bankruptcy proceeding if it is "related to" the proceeding, meaning that it would have affected the debtor's rights or liabilities. 28 U.S.C. § 1334; *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996). Similar to NW's claims against SSD, the ESOP's claims are related to the Nationwise bankruptcy because, if they had been brought during the bankruptcy proceeding, they would have affected the debtor's estate.

The "Proof of Claim" entered by Star Bank in the bankruptcy proceeding on behalf of the ESOP was based in part upon the ESOP's ownership of Nationwise shares. In its current suit against SSD, the ESOP alleges that SSD contributed to the financial distress and resulting bankruptcy of Nationwise, thereby causing the loss in the value of the ESOP's shares. Because the ESOP is not entitled to a double recovery on the value of its shares, any recovery that the ESOP might have received on its claims against SSD in the bankruptcy proceeding would have reduced the ESOP's claims against the bankruptcy estate, thus altering the overall distribution of assets among creditors. *See In re Lenz*, 80 B.R. 528, 530 (Bankr. Colo. 1987) (stating that "[i]f [a creditor] were allowed to share as other unsecured creditors in the estate to the extent of its . . . claim after having already received the . . . value of the property . . . , it would be receiving 'double' benefits to the detriment of other unsecured creditors").

The ESOP's claims against SSD are thus clearly "related to" the Nationwise bankruptcy. But it cannot be said that the ESOP *should* have raised or reserved these claims if it *could not have done so* for a reason other than their relatedness. Characterizing its claims against SSD as allegations of (1) a

whether the ESOP's claims "should have been litigated" in the bankruptcy proceeding—require separate analysis.

### 1.  *The district court did not err in concluding that the "identity of the parties" requirement for res judicata is satisfied with respect to the ESOP*

SSD argues that the second element of res judicata is satisfied with respect to the ESOP because both the ESOP and SSD were parties to the Nationwise bankruptcy proceeding. For the reasons set forth above in Part II.B.2.b., SSD was a party. The ESOP was also a party because, for the purposes of res judicata, all shareholder-creditors are considered "participants" in the bankruptcy proceeding. *See In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at *4 (6th Cir. Jan. 12, 1993) (unpublished table decision) (holding that a shareholder-creditor of the debtor was a participant in the bankruptcy proceeding, and therefore a party to it for the purposes of res judicata). *Sanders Confectionery Prods., Inc., v. Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992) (holding that a shareholder-creditor of the debtor was a party to the bankruptcy proceeding, so that its claims against another creditor and the creditor's attorneys were barred by the res judicata effect of the confirmation order). As a shareholder-creditor of Nationwise, the ESOP was therefore a party to the bankruptcy proceeding.

The ESOP, however, argues that it should not be considered a party to the Nationwise bankruptcy because it had "no meaningful participation" in the proceeding. By "meaningful," the ESOP contends that its interests were not sufficiently represented. This argument fails for two reasons. First, the ESOP cites no authority for the proposition that the relative vigor of a creditor's representation in a bankruptcy proceeding is relevant to its identification as a party. Second, even if a requirement of "meaningful" participation existed, the record shows that the ESOP was actively represented in the proceeding by Star Bank, acting as the ESOP's trustee. The numerous objections and the "Proof of Claim" offered by Star Bank on behalf of the ESOP and all of its participants

a party in interest herein as the representative of the debtor's minority shareholders." Star Bank also filed several separate objections and motions during the bankruptcy proceeding. On December 18, 1995, Star Bank filed a "Proof of Claim" that sought relief based upon its holding of title to Nationwise shares, and listed each of the individual plan participants on whose behalf it was asserting a claim. Star Bank objected a month later to the confirmation of Nationwise's Reorganization Plan on behalf of "approximately 1,700 participants" who are "primarily employees of the debtor." Finally, on October 9, 1996, Star Bank filed a document in support of its proof of claim, asserting that it "holds the shares of the Debtor's stock for the benefit of plan participants, namely eligible employees of Debtor."

Neither the ESOP (through Star Bank) nor Nationwise reserved, prior to the conclusion of the bankruptcy proceeding, the specific claims they now assert against SSD. Nationwise did, however, include the following omnibus reservation of rights in its Disclosure Statement For Plan of Reorganization filed in the bankruptcy proceeding on December 7, 1995:

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

The bankruptcy court approved Nationwise's Disclosure Statement on December 12, 1995. Nationwise then filed its proposed Plan of Reorganization on January 17, 1996, and added corrections to the proposed Plan on February 16, 1996. The bankruptcy court confirmed the Plan, which had been approved by Nationwise's creditors, including the ESOP, on the same date.

In January of 1998, SSD moved for summary judgment on all claims pending against it. The court granted SSD's motion with respect to the ESOP and NW on November 13, 1998,

holding that the ESOP's claims are barred by res judicata, and that NW's claims are barred by both res judicata and judicial estoppel. Approximately one year later, the district court granted summary judgment in favor of SSD regarding Browning's and Rademan's claims. This appeal followed. (Because Browning and Rademan are in the same position as the ESOP for the purposes of this appeal, and the Appellants' brief did not treat their interests separately from those of the ESOP, our analysis and conclusions concerning the ESOP also apply to Browning and Rademan.)

## II. ANALYSIS

### A. Standard of review

This court reviews de novo a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. The district court did not err in concluding that NW's claims are barred by the res judicata effect of the confirmation order in the Nationwise bankruptcy proceeding

NW contends that the district court erred in granting summary judgment in favor of SSD on the basis of res judicata and judicial estoppel because (1) SSD's concealment prevented NW from knowing about its claims against SSD at the time of the confirmation order, (2) SSD has failed to

leads to the conclusion that NW's failure to disclose was, without any evidence to the contrary, inadvertent. SSD provides no evidence that NW intended to "have its cake and eat it too." Thus, NW's inadvertence renders the application of judicial estoppel inappropriate to prevent it from now asserting its claims against SSD.

Because the first requirement for the application of judicial estoppel has not been met, we need not reach the second requirement—that the bankruptcy court "adopted" the position that NW had no claims against SSD. SSD's failure to meet the first requirement is sufficient for us to conclude that the district court erred in holding that NW's claims against SSD are barred by judicial estoppel in addition to res judicata.

### D. The district court did not err in concluding that the ESOP's claims are barred by the res judicata effect of the confirmation order in the Nationwise bankruptcy proceeding

The ESOP, like NW, argues that the district court erred in concluding that its claims were barred by res judicata because (1) SSD's alleged concealment prevented the ESOP from knowing that SSD should be added as a defendant until after the confirmation of the Plan of Reorganization in the Nationwise bankruptcy, and (2) SSD has not satisfied the four elements of res judicata with respect to the ESOP's claims. The ESOP's concealment argument fails for the same reasons set forth above in Part II.B.1. with respect to NW. Similarly, two of the four res judicata elements are easily satisfied for the reasons previously stated. The first of these—that the confirmation of the Plan of Reorganization in the Nationwise bankruptcy proceeding constitutes a final judgment—is covered above in Part II.B.2.a. Likewise, the fourth element—an "identity of claims"—is satisfied with respect to the ESOP for the same reasons set forth above in Part II.B.2.d. The second and third elements of res judicata, however—whether there exists an "identity of the parties" and

"hav[ing] [one's] cake and eat[ing] it too."  861 F.2d at 472 (alteration in original).  Although this court has not addressed whether bad faith or an attempt to mislead the court is a necessary prerequisite to the application of judicial estoppel, other courts have held that judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence.  *See, e.g., United States v. Hussein*, 178 F.3d 125, 130 (2d Cir. 1999); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196-97 (4th Cir. 1998); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir. 1997).  We consider this approach to be more consistent with the policy reasons behind the doctrine of judicial estoppel than the Third Circuit's approach in *Oneida*.

The Fifth Circuit, in *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999), defined two circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be deemed inadvertent.   One is where the debtor lacks knowledge of the factual basis of the undisclosed claims, and the other is where the debtor has no motive for concealment. *Id.* at 210.  Although this court is not bound by *Coastal Plains, Inc.*, these two requirements for a finding of an inadvertent omission seem reasonable and appropriate in light of the policies underlying the doctrine of judicial estoppel as expressed by this court in *Teledyne* and *Reynolds*. We therefore adopt them in our analysis of the present case.

NW's knowledge of the factual basis for its claims against SSD, established above in Part II.B.1., forecloses a finding of inadvertence due to a lack of knowledge.  On the other hand, NW had no motive for concealment in light of its role as a debtor-in-possession, having all the rights and duties of a trustee.   11 U.S.C. § 1107.  Under Nationwise's Plan of Reorganization, all of the estate's assets are to be reduced to cash by NW and distributed to creditors in accordance with the terms of the plan and the priority provisions of the Bankruptcy Code.  NW will thus receive no windfall as a result of its failure to disclose its claims, because only Nationwise's creditors will receive the distribution of any recovery from SSD.  This lack of motive for concealment

establish the elements of res judicata, and (3) NW expressly reserved its right to bring claims against SSD.

### 1.    *The district court did not err in concluding that NW failed to present a genuine issue of material fact regarding SSD's alleged concealment*

In support of its contention that SSD cannot invoke the doctrine of res judicata because SSD wrongfully concealed its professional misconduct, NW cites *McCarty v. First of Georgia Insurance Company*, 713 F.2d 609 (10th Cir. 1983). *McCarty* held that where a plaintiff's failure to raise or reserve its cause of action in an earlier case between the parties was caused by the defendant's "wrongful concealment" of facts giving rise to the claim, the res judicata defense is not available. *Id.* at 612-13. The two elements that must be shown under *McCarty* are: (1) wrongful concealment of material facts that (2) prevented plaintiffs from asserting their claims in the first action. *Id.*

Although the Tenth Circuit's decision in *McCarty* is not binding on this court, its analysis appears sound and provides a useful framework for resolving the issue at hand. "Wrongful concealment" can be determined by analogy to cases in this circuit dealing with "fraudulent concealment," the presence of which bars a defendant from asserting the statute of limitations as a defense.  In order to invoke the doctrine of fraudulent concealment, "[a]ffirmative concealment must be shown; mere silence or unwillingness to divulge wrongful activities is not sufficient." *Helmlight v. Martins Ferry*, No. 94-4089, 1995 WL 445730, at *1 (6th Cir. July 26, 1995) (holding that the plaintiff's civil rights claims were barred by the statute of limitations). "Concealment by mere silence is not enough.   There must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Pinney Dock and Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1467 (6th Cir. 1988).

SSD's alleged professional misconduct, according to NW, prevented NW from raising or reserving its claims against SSD.  The alleged acts of concealment consist of: (1) failing

to disclose to the bankruptcy court the fact that SSD's representation of Saul Levy in the 1992 litigation was adverse to Nationwise, and (2) engaging in obstructionist discovery tactics with the plaintiffs in the instant suit. NW contends that, beginning in August of 1995, SSD prevented NW from receiving the documents necessary to substantiate its claims against SSD until April of 1997, over a year after the confirmation of the Nationwise Reorganization Plan.

In response to the first alleged act of affirmative concealment, SSD argues that its partner, G. Christopher Meyer, fulfilled SSD's duty of disclosure by submitting the following statement in an August 18, 1995 affidavit accompanying NW's application to employ SSD in the bankruptcy proceeding:

> SS&D had, prior to the filing of this bankruptcy case, represented Saul Levy . . . in matters both related to Nationwise and unrelated . . . . Both Levy and the Debtor have agreed to SS&D's representation of the Debtor as described in the Motion and have agreed to waive any potential conflict of interest which may arise as a result of such representation. Such agreement and waiver by Levy has been made on the basis that SS&D will not represent the Debtor with respect to any litigation directly challenging any claim or interest asserted by Levy in these cases, which matters, if any, will be handled by other counsel for Debtor.

NW complains that Meyer's statement fails to disclose that SSD's representation of Levy was adverse to Nationwise. But the adverse representation would have been known to NW through its predecessor's first-hand experience with the 1991 and 1992 dispute and litigation. In addition, SSD's representation of Levy in connection with the actions that form the basis of NW's claims were matters of public record in the state court following the commencement of Browning's and Rademan's suit in August of 1995. Concealment of the adverse nature of SSD's representation was therefore not possible, even if it had been attempted.

is with an affirmative assertion. In arguing that a debtor's failure to disclose its claims is alone sufficient to constitute the assertion of a "position" in a bankruptcy proceeding, SSD cites *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988), which held that the debtor's postpetition bankruptcy claim against a bank was precluded by judicial estoppel because the debtor failed to disclose the claim in the prior bankruptcy proceeding. *Id.* at 419.

SSD also points out that this court has cited *Oneida* approvingly for the proposition that "statements or omissions by a debtor in a disclosure statement [are] sufficient for a finding of judicial estoppel." *Reynolds v. Comm'r*, 861 F.2d 469, 474 (6th Cir. 1988) (applying judicial estoppel to prevent the Internal Revenue Service from arguing that a husband was liable for the taxes on a certain capital gain after convincing another court in an earlier bankruptcy proceeding that the wife was liable for the tax). The language in *Reynolds*, however, which noted that other courts have held that an "omission" by a debtor can support a finding of judicial estoppel, is dicta because (1) the IRS in *Reynolds* had affirmatively urged its conflicting positions upon the courts in both the first and second proceeding, and (2) the IRS was a creditor, not a debtor, in the bankruptcy proceeding. We are not bound by the quoted language in *Reynolds* because it was not essential to the holding of that case. *Brentwood Academy v. Tennessee Secondary Athletic Ass'n,* 180 F.3d 758, 765 (6th Cir. 1999) (declining to follow nondispositive statements in a prior Sixth Circuit case because the statements were "*dicta* and do not have the force of law"), *rev'd on other grounds*, 531 U.S. 288 (2001).

This court has stressed that the doctrine of judicial estoppel is utilized in order to preserve "the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). In *Reynolds*, the evil to be avoided is colorfully described as "the perversion of the judicial machinery," "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," and

NW's blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of NW's claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names SSD nor states the factual basis for the reserved claims. We therefore conclude that NW's blanket reservation does not defeat the application of res judicata to its claims against SSD.

## C.  The district court erred in concluding that NW's claims against SSD are barred by judicial estoppel

In addition to concluding that NW's claims against SSD were barred by the affrmative defense of res judicata, the district court ruled for SSD on the alternative ground that the doctrine of judicial estoppel precluded NW from pursuing its action against the law firm. The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position "either as a preliminary matter or as part of a final disposition." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990). We review de novo a district court's application of judicial estoppel. *Smith v. Fireman's Fund Ins. Co.*, No. 92-6540, 1994 WL 6043 at *3 (6th Cir. Jan. 7, 1994) (unpublished table decision).

Regarding the first requirement for judicial estoppel, SSD argues that NW's predecessor took a position under oath that was contrary to NW's current claims against SSD when, in the Nationwise bankruptcy proceeding, it failed to include these claims in its Disclosure Statement filed on December 7, 1995. A debtor has an affirmative duty to disclose all of its assets to the bankruptcy court, 11 U.S.C. § 521(1), and SSD asserts that NW's failure to raise or list these specific claims as assets in its Disclosure Statement constitutes the position that no such claims existed.

But SSD presented no proof to show that NW intended to convince the bankruptcy court that it had no claims against SSD. NW's omission is as consistent with inadvertence as it

As to the second alleged act of affirmative concealment, NW contends that SSD hid its improper representation of Levy by engaging in a discovery dispute in which SSD asserted claims of attorney-client privilege. According to NW, these tactics forestalled its receipt of crucial discovery documents until April of 1997. These documents, NW argues, "confirmed—for the first time—that [it] had supportable claims against SSD." But the fact that Levy was represented by SSD during the time that he was allegedly defrauding Nationwise was known to NW because of the allegations contained in Browning's and Rademan's 1995 complaint against Levy. The question, then, is whether that knowledge sufficed for NW to bring its claims against SSD in the bankruptcy court before the conclusion of the proceeding in February of 1996 or, instead, whether NW learned of the existence of supportable claims against SSD only after receiving the documents in April of 1997.

In rejecting NW's claims that these documents contained a "smoking gun," the district court cited NW's failure to "attach, paraphrase, or even summarize the contents of the crucial documents" in order to show that they revealed something material that NW previously did not know. The district court therefore concluded that NW knew enough to bring suit against SSD before the conclusion of the bankruptcy proceeding.

NW attempts to remedy this problem by discussing the disclosed SSD documents in detail in its appellate brief. The documents, however, show only that SSD represented and advised Levy in connection with matters that involved allegedly tortious activity on Levy's part. Nothing in the documents appear to add any material facts to those set forth in Browning's and Rademan's original 1995 complaint against Levy. These same facts are used by NW to assert its claims against SSD in its 1998 fourth amended complaint. For example, paragraphs 92 and 94 of the fourth amended complaint, which set forth the key facts underlying NW's claims against Levy and SSD, respectively, correspond in all significant respects to paragraph 68 of the original complaint,

which sets forth the factual basis for Browning's and Rademan's claims against Levy. Because NW's fourth amended complaint adds SSD as a defendant without relying in any crucial way on the documents disclosed in April of 1997, we find no error in the district court's conclusion that NW had sufficient information to bring its claims before it received the SSD documents in question.

We also find significant the fact that NW does not challenge the appropriateness of SSD's assertion of privilege over the documents in question, nor does NW argue that these claims were somehow a pretext constituting an affirmative act of concealment. Therefore, regardless of the worth of these documents to NW, we find no basis to support the allegation that SSD wrongly concealed any material facts that prevented NW from asserting its claims in the bankruptcy proceeding.

### 2. The district court did not err in concluding that NW's claims against SSD are barred by res judicata

A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997). We will review de novo a district court's application of res judicata, *In re Piper Aircraft Co., Inc.*, 244 F.3d 1289, 1295 (6th Cir. 2001), with the party asserting the defense (here, SSD) bearing the burden of proof. *Id.* at 1296.

#### a. The bankruptcy court confirmation order is a final judgment for the purposes of res judicata with respect to NW's claims against SSD

As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). Such

submitted to the bankruptcy court in December of 1995. Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding. *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997). Because all of the elements of res judicata are satisfied in the present case, NW must have either adjudicated its claims in the bankruptcy proceeding or reserved them in the reorganization plan or confirmation order. *Id.* at 259-60; *In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at *4.

The claims against SSD were obviously not litigated in the bankruptcy proceeding. NW argues, however, that it expressly reserved its claims against SSD through the omnibus provision included in its Disclosure Statement. But a general reservation of rights does not suffice to avoid res judicata. *D & K Props. Crystal Lake*, 112 F.3d at 260 (holding that the debtor's attempted reservation of rights lacked the specificity required to reserve a cause of action, citing *In re Micro- Time Mgmt. Sys., Inc.*). A side-by-side comparison shows that the blanket reservation of rights that was deemed insufficiently specific in *In re Micro-Time Management Systems, Inc.* is essentially the same as NW's purported reservation in its Disclosure Statement:

*Micro-Time Management Systems, Inc.*:

All causes of action which the debtor may choose to institute shall be vested with the debtor.

*In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at *5.

*NW*:

In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

#### d.   The district court did not err in concluding that there is an "identity of claims" between the claims NW currently asserts and the Nationwise bankruptcy proceeding

The final element of res judicata—that there be an "identity of claims"—is satisfied if "the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts." *In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at *5.  In the present case, the "identity of claims" is shown by the fact that NW alleges that "SSD knew or should have known that the settlement of the [1992] Nationwise Litigation and the termination of the Subscription Agreement would have a negative, detrimental impact upon Nationwise," and that "the events of early 1992 essentially destroyed the company."

Because NW's claims against SSD allege that SSD's representation of Levy in connection with the 1991 and 1992 dispute over the control of Nationwise and the resulting litigation and settlement contributed to Nationwise's bankruptcy, the current claims against SSD "arise out of the same transaction," or "the same core of operative facts" as the Nationwise bankruptcy proceeding. *Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 875 (2d Cir. 1991) (holding that there existed an identity of claims between an earlier Chapter 11 bankruptcy proceeding and a post-confirmation claim by the debtor that alleged that the actions of one of its creditors "forced [the debtor] into bankruptcy").

For all of the reasons set forth above, we conclude that the elements of res judicata are satisfied with respect to NW's claims against SSD.

#### 3.   The district court did not err in concluding that NW failed to expressly reserve its claims by disclosing them to the bankruptcy court

To avoid the effect of res judicata on its claims against SSD, NW argues that it reserved its right to sue SSD in the Disclosure Statement For Plan of Reorganization that it

confirmation by a bankruptcy court "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991). In light of the conclusion in Part II.B.2.c. below—that NW's claims against SSD should have been raised in the bankruptcy proceeding—the bankruptcy court's confirmation of Nationwise's Plan of Reorganization constitutes a final judgment regarding NW's claims.

#### b.   The district court did not err in concluding that the "identity of the parties" requirement for res judicata is satisfied with respect to NW and SSD

Res judicata bars not only the actual parties to an earlier bankruptcy proceeding from later bringing suits which should have been brought in the context of the proceeding, but also those in privity with the parties. *Sanders Confectionary Prods., Inc.*, 973 F.2d at 481. "Privity in this sense means a successor in interest to the party . . . ." *Id.*  By its own admission, NW is the successor-in-interest to Nationwise, the debtor in the bankruptcy proceeding. NW is therefore in the same position as Nationwise would have been regarding the res judicata effect of the confirmation.

In holding that SSD was also a party to the bankruptcy proceeding, the district court cites *In re Micro-Time Mgmt. Sys., Inc.*, Nos. 91-2260, 91-2261, 1993 WL 7524, at *4 (6th Cir. Jan. 12, 1993) (unpublished table decision)*, for the proposition that, as a rule, the debtor's attorneys are participants in the proceeding for the purposes of res judicata. *Id.* (holding that the debtor's former law firm was a "party to the proceeding or, at least, privy to parties of the proceeding" for res judicata purposes). NW argues that SSD was not a participant in the Nationwise bankruptcy proceeding because it was replaced as the debtor's counsel only one month after the petition was filed. But SSD's early exit as general counsel for Nationwise does not change the fact of its participation in the proceeding on behalf of the debtor, nor does it take into

account that SSD remained as special counsel throughout the proceeding. If anything, the fact that SSD was replaced by Arter & Hadden early in the proceeding ensured that NW had ample opportunity to raise or reserve its claims against SSD before the confirmation of its Plan of Reorganization in February of 1996.

### c. *The district court did not err in concluding that NW's claims against SSD should have been raised or reserved in the Nationwise bankruptcy proceeding*

Before deciding whether NW's claims against SSD *should* have been brought in the bankruptcy court, we must first consider whether those claims *could* have been brought in that forum. Bankruptcy courts have original jurisdiction over all claims arising under the Bankruptcy Code. 28 U.S.C. § 1334(b). Such claims, referred to as "core" proceedings, either invoke[] a substantive right created by federal bankruptcy law or . . . could not exist outside of the bankruptcy." *Sanders Confectionary Prods., Inc.,* 973 F.2d at 483. NW's claims against SSD are "non-core" proceedings because, as claims of the successor-in-interest to the debtor against a non-creditor third party, they are not among the core proceedings arising under the Bankruptcy Code or listed in 28 U.S.C. § 157(b)(2)(A-O).

NW's claims against SSD, however, could have been raised in the bankruptcy court pursuant to the court's limited jurisdiction over non-core proceedings under 28 U.S.C. § 157(c)(1). Although a bankruptcy court does not have jurisdiction to reach a final decision regarding a non-core claim, it "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11" and, in such a situation, "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge . . . ." *Id.*

Based upon a bankruptcy court's power to hear non-core, related claims pursuant to 28 U.S.C. § 157(c)(1), this court, in *Sanders Confectionery Products*, applied res judicata to a

non-core claim even though the claim could not have been finally adjudicated in the bankruptcy court:

> While the bankruptcy court could not make a final decision in a non-core proceeding, absent the consent of the parties, it could hear the matter and refer it to the district court. Through its bankruptcy jurisdiction, the district court could decide the claim, allowing for a correct adjustment of the relations between all of the parties. Therefore, a confirmed plan in a bankruptcy case may operate to bar both core and non-core proceedings.

973 F.2d at 483. If NW's claims against SSD are thus deemed "related to" the Nationwise bankruptcy proceeding, the bankruptcy court could have heard the case and referred it to the district court pursuant to 28 U.S.C. § 157(c).

NW's claims will be considered "related to" the Nationwise bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Sanders Confectionery Prods. Inc.*, 973 F.2d at 482. Stated another way, a claim is "related to" the bankruptcy proceeding if it would have affected the debtor's rights or liabilities. *In re Dow Corning Corp.,* 86 F.3d 482, 489 (6th Cir. 1996) (holding that a claim is "related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate"). Under this test, NW's claims against SSD are related to the bankruptcy proceeding because, if they had been brought during the proceeding, any recovery received by NW would have represented an asset, available for distribution to Nationwise's creditors and shareholders. *In re Micro-Time Mgmt. Sys., Inc.*, 1993 WL 7524, at *5 (holding that a debtor's suit against his attorney in the bankruptcy proceeding should have been brought before the confirmation because the suit would have affected the debtor's rights and liabilities).