*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0373p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

MICHAEL STEPHENSON, as Bankruptcy
Trustee of SENAN AL-MANSOOB,

                *Plaintiff-Appellant*,

     *v.*

MATTHEW MALLOY; WILBURN ARCHER
TRUCKING,

                *Defendants-Appellees*,

ZISCHLER TRANSPORT; ZEITRANZ TRUCKING;
JEURGEN ZISCHLER,

                *Defendants*.

No. 11-1671

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 5:09-cv-14527—John Corbett O'Meara, District Judge.

Argued: June 1, 2012

Decided and Filed: October 30, 2012

Before: SILER and WHITE, Circuit Judges; REEVES, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Phillip S. Serafini, SERAFINI, MICHALOWSKI, DERKACZ & ASSOCIATES, P.C., Sterling Heights, Michigan, for Appellant. Aaron D. Wiseley, HOLMES & WISELEY, P.C., Grand Rapids, Michigan, for Appellees. **ON BRIEF:** Phillip S. Serafini, SERAFINI, MICHALOWSKI, DERKACZ & ASSOCIATES, P.C., Sterling Heights, Michigan, for Appellant. Aaron D. Wiseley, HOLMES & WISELEY, P.C., Grand Rapids, Michigan, for Appellees.

---

    [*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

————————————

**OPINION**

————————————

DANNY C. REEVES, District Judge.  Senan Al-Mansoob filed this lawsuit in July 2009.  When he instituted Chapter 7 bankruptcy proceedings two months later, he did not list his claims against Defendants Matthew Malloy and Wilburn Archer Trucking, Inc., among his assets.  Upon learning of the omission, Defendants sought summary judgment, arguing that Al-Mansoob was judicially estopped from pursuing the claims.  Relying on a Sixth Circuit case decided a few days before Al-Mansoob filed his response, the district court granted summary judgment and denied a subsequent motion for reconsideration by the bankruptcy trustee, who had been substituted as the real party in interest.  On appeal, the trustee contends that judicial estoppel should not apply to him and that Al-Mansoob's failure to disclose the case was inadvertent in any event.  We find both arguments persuasive.

**I.**

The parties' dispute arises out of a traffic accident involving Al-Mansoob and Matthew Malloy.  When the accident occurred, Malloy was driving a truck owned by Wilburn Archer Trucking, Inc.  Al-Mansoob sued Malloy and Wilburn Archer Trucking for negligence, filing his first amended complaint in Wayne County Circuit Court on July 19, 2009.[1]  Defendants timely removed the case to the United States District Court for the Eastern District of Michigan.

Al-Mansoob sought Chapter 7 bankruptcy protection on September 30, 2009.  In his bankruptcy filings, Al-Mansoob did not list this lawsuit among his assets or as an action to which he was a party, as required by the bankruptcy code.[2]  He did, however, list a suit against State Farm arising out of the same accident.  Amendments to his

---

[1]Claims against three other Defendants were voluntarily dismissed prior to the case's removal.

[2]A debtor has an affirmative duty to disclose all of his assets to the bankruptcy court.  11 U.S.C. § 521(a)(1).

bankruptcy filings on December 31, 2009, and February 18, 2010 did not cure the omission. The bankruptcy court granted Al-Mansoob a discharge on March 3, 2010.

In July 2010, Defendants moved for summary judgment, arguing that Al-Mansoob was judicially estopped from pursuing his claims because he had failed to disclose them in the bankruptcy proceeding. They cited the three-prong test adopted by this circuit in *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002), for judicial estoppel in the bankruptcy context. Under that test, judicial estoppel bars a party from (1) asserting a position that is contrary to one he asserted under oath in a prior proceeding; (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) the party's conduct was not inadvertent. *Id.* at 775-76. *Browning* identified "two circumstances under which a debtor's failure to disclose a cause of action in a bankruptcy proceeding might be deemed inadvertent": first, "where the debtor lacks knowledge of the factual basis of the undisclosed claims," and second, "where the debtor has no motive for concealment." *Id.* at 776. In their motion, Defendants asserted that Al-Mansoob's pursuit of this action was inconsistent with his failure to disclose it in the bankruptcy proceedings; that the bankruptcy court had adopted the contrary position by granting him a discharge; and that his omission of the instant claims was not inadvertent because he knew of them at the time he filed for bankruptcy and had a motive for concealing them, namely, "want[ing] to keep any settlement, verdict or judgment to himself."

Al-Mansoob responded to the summary-judgment motion on August 16, 2010. He denied that he had asserted inconsistent positions in the two proceedings. He also suggested that his failure to disclose this action was inadvertent because he had "lacked sufficient knowledge of the differences in the factual bas[e]s" of the instant suit and his suit against State Farm, which had been listed among his assets. Al-Mansoob argued that, if he had intended to mislead the bankruptcy court, he would have omitted the State Farm case as well. However, despite citing Sixth Circuit precedent that judicial estoppel does not apply where the plaintiff has "take[n] affirmative steps to inform the trustee and

the Bankruptcy Court" of omitted claims, he presented no evidence or argument that the bankruptcy trustee, Michael Stevenson, had been aware of this action.

Nor did Al-Mansoob's response address *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472 (6th Cir. 2010), which had been decided five days earlier. *White* added a bad-faith inquiry to the inadvertence prong of the judicial-estoppel test set out in *Browning*. *See id.* at 478. In *White*, this bad-faith element was met because the plaintiff's "attempts to advise the bankruptcy court and the trustee of her [omitted] claim" were insufficient. *Id.* at 484.

At a motion hearing held on September 23, 2010, counsel for Defendants argued that *White* was "directly on point." With respect to the issue of inadvertence, he asserted:

> When I filed this motion, and until August 27, the bankruptcy trustee never knew anything about this lawsuit. In response to the motion, you don't have an affidavit from Mr. Mansoob's bankruptcy attorney who says yes, I did disclose this. It was just inadvertently left out of the schedules. It was left out of the bankruptcy proceeding.
>
> Even today, [Al-Mansoob's counsel Phil] Serafini has an affidavit from the trustee that he allowed me to review beforehand, as I'm sure he's going to present to the Court, even that doesn't indicate that the trustee knew about this lawsuit at the time Mr. Mansoob was going through his bankruptcy proceeding. Based on *White*, there is zero indication why Plaintiff — why Plaintiff's claim shouldn't stop today.

Serafini responded, "as an officer [of] the court," that the trustee had been aware of the case since the previous fall. He stated that when the trustee became involved in the case against State Farm, they (Serafini and the trustee) discussed the instant action as well. In addition, according to Serafini, he and the trustee "discussed [this lawsuit] numerous times over the course of the negotiations that took place from that day forward." Nevertheless, his description of the trustee's affidavit — which was apparently presented to the district court at the conclusion of the hearing but does not appear in the record — suggested that it did not contain any information as to when the trustee learned of Al-Mansoob's claims against Malloy and Wilburn Archer Trucking.

Defendants' attorney replied:

> Comments about conversations with bankruptcy trustees, there's nothing in front of the Court to substantiate that, other than the statements of counsel. We don't have affidavits and it is not the Defendant[s'] responsibility to show that he did this on purpose. It's simply to show that this omission was not inadvertent, that the disclosure [sic] was not inadvertent.
>
> Because he knew of this lawsuit when he filed for bankruptcy, and he always has a motive to conceal or otherwise not disclose all his assets, the intent is — inadvertence is no longer an issue. All three prongs have been met.

Counsel for Defendants also urged the court to consider the timing of Al-Mansoob's eventual disclosure, asserting that he "never disclosed any existence of a bankruptcy filing until after [Defendants] filed a summary-judgment motion, and under *White*, that is a significant factor that the Court should take into consideration." During the hearing, the district judge indicated that he believed *White* was dispositive, commenting that he was "generally impressed with the strength of the *White* case as it affects the decision in this case" and "believe[d] *White* strongly suggests . . . how th[e] decision on Defendant[s'] motion should be resolved."

The day after the hearing, Al-Mansoob filed a supplemental response to the summary-judgment motion in which he addressed *White* and certain misrepresentations purportedly made by Defendants' attorney at the hearing. Attached to the supplemental response were several supporting documents, including an affidavit from the bankruptcy trustee. In it, the trustee acknowledged that he had "known about this lawsuit, as well as the claim against State Farm[,] since the fall of 2009," and that he had received correspondence from Al-Mansoob's counsel regarding both cases as early as October 19, 2009. He denied having any "evidence that Mr. Al-Mansoob has ever attempted to hide either of these liability assets from [his] discovery." Another affidavit, by Serafini, likewise averred that the trustee had been aware of this lawsuit since early in the bankruptcy proceedings.

The supplemental response included several documents corroborating these affidavits, such as the following letter, dated October 19, 2009, from an attorney at Serafini's firm to the trustee:

> Please be advised that our firm represents Mr. Almansoob [sic] in both a first and third party auto case currently pending in the Court. Given Mr. Almansoob's [sic] bankruptcy, it is my understanding that the firm must be retained to continue these lawsuits. I spoke with your assistant Faye this afternoon to discuss how we should proceed. Please contact me at your earliest convenience to discuss.

In an e-mail three days later, the same attorney forwarded a copy of the firm's retainer agreement to the trustee and asked that his e-mail be considered "the firm's request to be retained as special counsel to continue the lawsuits (1st and 3rd party cases) on behalf of the bankruptcy estate." The e-mail continued: "It is my understanding that the captions for the pending litigation should be amended to reflect the real party in interest is now [t]he bankruptcy trustee on behalf of the bankruptcy estate for M[r]. Almansoob [sic]."

Still other documents provided with the supplemental response reflect that Serafini sent copies of both complaints to the lawyer representing Al-Mansoob in his bankruptcy proceedings and to the trustee in mid-February 2010.[3] In the latter correspondence, Serafini again sought direction regarding the third-party action: "I do need to know if you intend to proceed on that case. If so, I need you to sign the retainer and hire me. Otherwise, I need the verification that Mr. Al-Mansoob may proceed on his own in that case." A transcribed phone message from the trustee on April 15, 2010, proposed a date for a meeting among Serafini, Al-Mansoob's bankruptcy counsel, and the trustee.

Defendants moved to strike Al-Mansoob's supplemental response, arguing that it was untimely and should not be considered. The court never ruled on the motion to

---

[3]Al-Mansoob also submitted the affidavit of his bankruptcy attorney, Afan Bapacker, who confirmed that he had received a copy of the Amended Complaint in this case in February 2010. Bapacker declared that when he amended the schedule of assets that month, Al-Mansoob's negligence claims were "mistakenly left out," but that he had discussed these claims with the bankruptcy trustee "on several occasions."

strike, but subsequently granted Defendants' motion for summary judgment in a five-page opinion.  The court's recitation of the test for judicial estoppel was taken from *Browning* and did not include bad faith as an element of the inadvertence prong.  Nevertheless, the court agreed with Defendants that *White* was "directly on point."  After briefly comparing the facts of the two cases, the court concluded: "Al-Mansoob made no effort to cure the omission before Defendants' motion for summary judgment was filed.  Therefore, under the holding in *White*, Defendants are entitled to summary judgment based on judicial estoppel."  The decision contained no mention of Al-Mansoob's supplemental response or the accompanying documents.  In the same opinion and order, however, the court granted Al-Mansoob's motion to substitute the bankruptcy trustee as the real party in interest pursuant to 11 U.S.C. §§ 323 and 541(a)(1).

Twenty-eight days later, the trustee filed a motion for reconsideration pursuant to Rule 59 of the Federal Rules of Civil Procedure.[4]  Much of the trustee's argument for reconsideration pertained to whether the claims could be barred by judicial estoppel when he, not Al-Mansoob, was the real party in interest.  He further argued that the omission was inadvertent, pointing out that he had repeatedly been advised of this suit's existence.  The affidavits and other documents that had been provided with Al-Mansoob's supplemental response were also attached to the trustee's motion for reconsideration.

The court denied the motion for reconsideration, finding it to be time-barred under the local rules because it had not been filed within ten days of the entry of

---

[4]Throughout the motion, the trustee variously invoked Rule 59(e) (Motion to Alter or Amend a Judgment), Rule 60(b) (Grounds for Relief from a Final Judgment, Order, or Proceeding), and Local Rule 7.1(g) (now Local Rule 7.1(h), Motions for Rehearing or Reconsideration).  The first paragraph, however, described the document as a "Motion for Reconsideration pursuant to Fed. R. Civ. P. 59."

summary judgment.**5**  The court further found that the trustee was not entitled to relief under the federal rules.  The sum of that analysis was as follows:

> To the extent Plaintiff seeks relief alternatively under Rules 59 and 60 of the Federal Rules of Civil Procedure, no grounds exist for the court to grant Plaintiff's motion.  Plaintiff asserts that this court failed to apply Prongs 1 and 2 of the judicial estoppel inquiry.  However, Prong 1 was established by Plaintiff's repeated failure to list the instant action in his bankruptcy proceeding until *after* Defendants filed their motion for summary judgment.  Prong 2 was similarly well established, as the bankruptcy court discharged Plaintiff and authorized distributions of money to Plaintiff, his attorney, and the trustee without any knowledge of this lawsuit which Plaintiff now claims is an asset.

The court then cited the standard for reconsideration under the local rules ("palpable defect") and concluded: "In this case the court finds no palpable defect.  Plaintiff has merely presented the same issues previously ruled upon by the court."  Again, the court gave no indication that it had considered the evidence regarding the trustee's knowledge of this litigation.  Nor did it acknowledge his argument that judicial estoppel was inapplicable because he had demonstrated an absence of bad faith.  Finally, despite the fact that the trustee had been substituted as the real party in interest, the court's decision on the motion to reconsider, like its summary-judgment opinion, was directed at Al-Mansoob, referring to the bankruptcy court's discharge of "Plaintiff" and authorization of "distributions of money to Plaintiff, his attorney, and the trustee."

The trustee timely appealed, seeking reversal of the summary judgment.

## II.

A district court's decision to grant summary judgment is reviewed de novo. *White*, 617 F.3d at 475.  Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and

---

**5**Local Rule 7.1 was amended effective March 1, 2010, to provide that motions for reconsideration must be filed within fourteen days after entry of the relevant judgment or order. *See* E.D. Mich. LR 7.1(h)(1).  Although this amendment was in effect at the time of the district court's decision, Al-Mansoob's motion would still have been untimely under the local rules.  However, because it was filed within twenty-eight days of the summary judgment, it was not time-barred under Rule 59. *See* Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Fed. R. Civ. P. 56(c)(1). In deciding whether the movant has met this burden, the court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The trustee maintains that he should not be subject to judicial estoppel based on Al-Mansoob's failure to disclose this action. He further contends that judicial estoppel does not apply here because the omission was inadvertent. We examine these issues de novo. *See White*, 617 F.3d at 476.

A.    Judicial Estoppel Does Not Apply to the Bankruptcy Trustee

As in his motion for reconsideration, the trustee's primary argument on appeal is that judicial estoppel cannot apply in this case because he became the real party in interest once the bankruptcy proceedings had begun. Several circuits have concluded that judicial estoppel does not bar a bankruptcy trustee from pursuing claims that the debtor failed to disclose. *See Reed v. City of Arlington*, 650 F.3d 571, 578-79 (5th Cir. 2011) (en banc); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1155 n.3 (10th Cir. 2007); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268, 1272 (11th Cir. 2004); *see also Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 387 (5th Cir. 2008) (per curiam). In *Parker*, for example, the Eleventh Circuit determined that judicial estoppel was inappropriate because the claim at issue "belong[ed] to the bankruptcy estate and its representative, the trustee," who had "made no false or inconsistent statement under oath in a prior proceeding and [was] not tainted or burdened by the debtor's misconduct." 365 F.3d at 1273. The Fifth Circuit has likewise refused to estop trustees based on debtors' misconduct, holding that "absent unusual circumstances, an innocent trustee can pursue for the benefit of creditors a judgment or cause of action that the debtor fails to disclose in bankruptcy."[6]  *Reed*, 650 F.3d at 573. And in *Eastman*, the Tenth Circuit

---

[6]The *Reed* court acknowledged the general rule that a trustee is subject to any defenses that could have been asserted against the debtor but explained that "courts are to evaluate these defenses as they existed at the commencement of the bankruptcy." 650 F.3d at 575 (citing *Parker*, 365 F.3d at 1272 n.3). Thus, where the defense of judicial estoppel arises from a debtor's failure to disclose a claim in his

noted that the district court's application of judicial estoppel was "[q]uite likely . . . inappropriate, at least to the extent [the debtor]'s personal injury claims were necessary to satisfy his debts," because "the trustee as the real-party-in-interest had not engaged in contradictory litigation tactics." 493 F.3d at 1155 n.3. These cases thus stand for the proposition that a debtor's errors or omissions should not be attributed to the trustee for purposes of judicial estoppel.**7**

Here, the trustee has been the real party in interest since September 30, 2009, when Al-Mansoob filed for bankruptcy. *See* 11 U.S.C. § 323 (bankruptcy trustee "is the representative of the estate" and may "sue and be sued"); 11 U.S.C. § 541(a)(1) (estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"). Defendants allege no wrongdoing by the trustee; it was Al-Mansoob who omitted the lawsuit from the bankruptcy filings. The trustee's pursuit of this action is therefore not contrary to a position he previously asserted under oath. *See White*, 617 F.3d at 476. Accordingly, we adopt the reasoning of the Fifth, Tenth, and Eleventh Circuits and find that Al-Mansoob's failure to disclose his claims does not bar the trustee from pursuing them.

### B.     *White* Is Distinguishable

Even if the trustee were deemed to stand in Al-Mansoob's shoes for judicial-estoppel purposes, *White* would not dictate dismissal of this case. In *White*, the district court ruled that the plaintiff was judicially estopped from pursuing her sexual-harassment claim, which she had failed to disclose in her initial bankruptcy filings. *Id.*

---

bankruptcy filings and his subsequent pursuit of that claim, "the [t]rustee receive[s] the . . . asset free of this affirmative defense." *Id.*

**7**Several courts have found it significant that this rule ultimately protects creditors. *See Reed*, 650 F.3d at 574 ("[J]udicial estoppel must be applied in such a way as to deter dishonest debtors . . . while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate."); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) ("Judicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application."). In the Sixth Circuit, however, recovery by creditors has not been of paramount concern in judicial-estoppel cases. *See White*, 617 F.3d at 482 n.10 (rejecting dissent's argument that the case should be allowed to continue for creditors' benefit and observing that "this court has previously applied judicial estoppel in similar circumstances, even though the result prevented recovery by bankruptcy creditors." (citing *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 420-27 (6th Cir. 2005))).

at 475. After examining *Lewis* and an earlier case, *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004), the *White* court announced a slightly expanded version of the three-prong test:

> [T]o support a finding of judicial estoppel, we must find that: (1) [the plaintiff–debtor] assumed a position that was contrary to the one that [he] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, this court considers whether: (1) [he] lacked knowledge of the factual basis of the undisclosed claims; (2) [he] had a motive for concealment; and (3) the evidence indicates an absence of bad faith.

617 F.3d at 478. With respect to bad faith, the court noted that "'under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if [he] does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional.'" *Id.* at 477 (quoting *Lewis*, 141 F. App'x at 426).

The first two prongs were easily met. White's omission of her harassment claim from her bankruptcy filings was tantamount to a statement that the claim "did not exist" and thus "was contrary to [her] later assertion of the harassment claim before the district court," and the bankruptcy court, in ordering White to make payments to the trustee, had adopted that position. *Id.* at 479. Additionally, there was no question that White knew of the basis for her harassment claim when she filed for bankruptcy, because she had already filed a complaint with the EEOC and received notice of her right to sue. *See id.* at 474, 479. Her motive for concealment was likewise clear: "if the harassment claim became a part of her bankruptcy estate, then the proceeds from it could go towards paying White's creditors, rather than simply to paying White." *Id.* at 479. This court then turned to "the more difficult question" whether White had acted in bad faith. *Id.* at 480.

White offered three pieces of evidence to show that she had not: an affidavit by her bankruptcy attorney, an application to employ counsel that she had filed in the bankruptcy court, and an amendment to her bankruptcy filings to add the omitted claim. *See id.* The bankruptcy attorney's affidavit stated only that "'[w]hen [he] appeared in [c]ourt on Ms. White's bankruptcy,'" the harassment claim "'was discussed.'" *Id.* The affidavit thus "provided no evidence as to what, exactly, was discussed, whom it was discussed with, or whether the omission from the initial filings was discussed or emphasized." *Id.* Furthermore, the transcript of that court appearance did not reflect any discussion of White's harassment claim. *Id.* at 481. The panel was similarly unimpressed by the application to employ counsel:

> This filing did provide some notice to the bankruptcy court that White had a harassment claim. However, her application did not identify whether she was the plaintiff or the defendant in the lawsuit . . . , the amount of the lawsuit, the facts giving rise to the lawsuit, or even when the actions giving rise to the lawsuit took place. It also did not indicate that the harassment claim had been omitted from her initial filings and it did not appear to trigger any request for additional information from the bankruptcy court or the trustee. Furthermore, it did not cause White to update her inaccurate filing statements. Consequently, the application did not adequately inform the court, the trustee, or White's creditors of the initial omission and it does not show an absence of bad faith or that White's omission resulted from mistake or inadvertence.

*Id.* Nor would the panel "consider favorably the fact that White updated her initial filings after the motion to dismiss was filed," since "[t]o do so would encourage gamesmanship." *Id.*; *see id.* at 480. The timing of White's lawsuit was also suspect: she had waited to file her harassment claim until the day after the confirmation hearing on her bankruptcy plan.[8] *Id.* at 482; *see id.* at 474-75. Because White's "limited and ineffective" attempts to correct the omission did not demonstrate an absence of bad faith, 617 F.3d at 482, the element of inadvertence was met. *See id.* at 483.

---

[8]Similarly, in *Lewis*, the facts indicated that the plaintiff had "acted intentionally and in bad faith" because, *inter alia*, she "began the process of filing her discrimination claim with the EEOC only one month after the bankruptcy plan was approved, which tends to show that she waited until the plan was approved before pursuing her discrimination action." 141 F. App'x at 428.

In this case, as in *White*, the first two prongs of the judicial-estoppel test pose little difficulty. It is undisputed that Al-Mansoob's bankruptcy filings did not include any mention of his claims against Defendants until August 27, 2010. This omission was equivalent to a statement that there were no such claims and was therefore inconsistent with his pursuit of the instant action. *See id.* at 479. Furthermore, when the bankruptcy court granted Al-Mansoob's discharge on March 3, 2010, it acted in reliance on the representations he had made concerning his assets — including the representation that this lawsuit did not exist. The bankruptcy court's approval of the State Farm settlement and the resulting distribution of that settlement also represented adoption of the contrary position. *See id.* ("'[W]hen a bankruptcy court — which must protect the interests of all creditors — approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that . . . is sufficient judicial acceptance to estop the party from later advancing an inconsistent position.'" (quoting *Lewis*, 141 F. App'x at 425) (other internal quotation marks omitted)).

Moreover, as the district court found, Al-Mansoob had knowledge of the instant claims when he filed for bankruptcy, because this action was already pending at that time. And he presumably had a motive to conceal the claims: "wanting to keep any settlement or judgment to himself." However, notwithstanding the district court's conclusion that he had "made no effort to cure the omission before Defendants' motion for summary judgment was filed," Al-Mansoob presented substantial evidence — albeit belatedly — that the bankruptcy trustee was told of this lawsuit long before Defendants sought summary judgment on judicial-estoppel grounds.

Although the district court had discretion to disregard Al-Mansoob's late submissions, it failed to even acknowledge them. *See Hooks v. Hooks*, 771 F.2d 935, 946 (6th Cir. 1985) ("While it is within the discretion of the district courts whether to consider affidavits submitted in an untimely fashion, the court below never gave any indication that it was declining to consider plaintiff's affidavit on rehearing because it was untimely or for any other reason."). It is appropriate for this court to consider them, however. First, the affidavits and correspondence clearly establish an issue of material

fact with respect to whether Al-Mansoob's omission was in bad faith. Furthermore, *White* was decided less than a week before Al-Mansoob's summary-judgment response was due. While his counsel certainly could have done a better job, both in his initial summary-judgment response and at oral argument, his failure to focus on the bad-faith factor is understandable given that *White* was the first case to clearly announce bad faith as part of the judicial-estoppel inquiry. Finally, the trustee timely sought reconsideration of the summary judgment under Rule 59(e). Under these circumstances, we may properly take the supplemental evidence into account. *See id.* (where plaintiff's late-filed affidavit "was sufficient to alert the court to the presence of an issue of material fact, and counsel offered a plausible explanation for its untimeliness and filed a timely motion for reconsideration," the appellate court was "obliged . . . to consider" it (citation and internal quotation marks omitted)).

The strength and nature of that evidence distinguish this case from *White*. Whereas White's actions indicated an intent to hide her harassment claim, there is simply nothing to suggest that Al-Mansoob tried to conceal this case from the bankruptcy court or trustee. The suit was already pending when he filed for bankruptcy, and his attorney communicated freely about it with the trustee from nearly the inception of the bankruptcy proceeding, repeatedly seeking the trustee's guidance as to how the litigation should be handled. In light of those communications, the fact that Al-Mansoob's bankruptcy filings were not amended until after Defendants moved for summary judgment is significantly less damning. *See Eubanks*, 385 F.3d at 898 n.1 (noting that "various courts in other jurisdictions have held that a trustee's knowledge of the claim precludes the application of judicial estoppel since the plaintiff was obviously not trying to defraud the court if they [sic] placed the trustee on notice."). In short, the record contains ample evidence that Al-Mansoob's omission of this lawsuit from his bankruptcy filings was inadvertent. Consequently, the suit is not barred by judicial estoppel.

**III.**

For the foregoing reasons, we **REVERSE** the district court's grant of summary judgment and remand for further proceedings.