*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NINA PRATT, Individually and as Personal
Representative of the ESTATE OF JUSTIN PRATT,

        Plaintiff,

and

TIMOTHY J. MILLER, Chapter 7 Trustee,

        Plaintiff-Appellee/Cross-Appellant,

v

EMPLOYERS MUTUAL CASUALTY
COMPANY,

        Defendant-Appellant/Cross-Appellee,

and

USAA CASUALTY INSURANCE COMPANY,
USAA INSURANCE COMPANY, and USAA
PROPERTY AND CASUALTY INSURANCE
COMPANY,

        Defendants.

UNPUBLISHED
October 12, 2023

No. 361946
Jackson Circuit Court
LC No. 19-003723-NF

Before: BOONSTRA, P.J., and BORRELLO and FEENEY, JJ.

PER CURIAM.

-1-

Defendant Employers Mutual Casualty Company[1] appeals by right a judgment awarding plaintiff[2] $980,000 in damages, plus interest. The judgment was entered after a jury determined that the decedent, Justin Pratt (Justin), was "occupying" the insured vehicle within the meaning of defendant's policy at the time he was struck by another vehicle, and the parties stipulated that plaintiff was entitled to damages of $1,000,000, the limit of defendant's underinsured motorist (UIM) coverage, less any available setoffs. Plaintiff cross-appeals, challenging the trial court's denial of case evaluation sanctions under MCR 2.403. We affirm in the main appeal, and we vacate and remand for further proceedings in the cross-appeal.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the morning of September 18, 2018, Justin was working as a garbage collector for Modern Waste Systems, Inc. (MWS), in Columbia Township. While collecting waste on Riverside Road, he was struck and killed by a pickup truck driven by Kenneth Eggleston. Justin's co-worker, Tyler Street, testified that Justin generally drove the garbage truck between stops, but would sometimes park the truck and assist in collecting garbage. The garbage truck Justin was using at the time of the incident was insured under a policy issued to MWS by defendant. Street collected cans from the right side of the road and placed the cans in a "lift" or "dumper" located at the back of the truck. Street used control levers on the passenger side of the back of the truck to raise the cans, empty the contents into the truck, and lower the cans, which he then returned to the side of the road. When there were garbage cans on the left side of the street, Justin would park the truck and similarly collect and empty those cans. Street also operated the lift for the cans collected by Justin because there were no controls on the driver's side of the truck. The truck had identical steps (or running boards) on the driver's-side and passenger-side of the back end of the truck, as well as grab handles located higher up on each side of the truck. Street stood and rode on the passenger-side step while the truck moved between stops.

On the morning in question, Eggleston was driving a Ford F-150 pickup truck towing a camper on the eastbound side of Riverside Road. The garbage truck was also on the eastbound side of the street. A witness who testified at trial, Wayne Gootee, passed the stopped garbage truck while driving westbound on Riverside Road. As Gootee passed the garbage truck, he saw Justin standing behind the garbage truck; Street also testified that Justin was standing behind the truck moments before the collision. Gootee then passed Eggleston's pickup truck, which was traveling eastbound in the same lane as the garbage truck. Gootee perceived that the pickup truck was moving too fast to avoid colliding with the garbage truck. The front passenger-side corner of the pickup truck collided with the rear driver's-side corner of the garbage truck. Justin was pinned

---

[1] Plaintiff's claims against defendants USAA Casualty Insurance Company, USAA Insurance Company, and USAA Property and Casualty Insurance Company were dismissed in March 2021, after these parties accepted the case evaluation award. Those defendants are not parties to this appeal.

[2] As we will discuss, plaintiff Nina Pratt was replaced during the litigation by plaintiff Timothy J. Miller in his capacity as bankruptcy trustee. When the distinction is not relevant, our use of "plaintiff" will refer to whichever party was prosecuting the action at the time; when relevant, we will refer to Nina by her first name and Miller as "the bankruptcy trustee."

between the two vehicles. Gootee heard, but did not see, the collision. Street had turned away and also did not see the collision. No other witnesses saw the collision. However, witnesses to the aftermath of the collision described Justin's location on top of the front area of the pickup truck, above the ground, after the collision. Justin was taken to a hospital and died from his injuries later that day.

Eggleston's insurance policy had a bodily injury liability limit of $20,000 per injured party. Nina, Justin's widow, submitted a UIM claim to defendant. Defendant denied the claim on the ground that Justin was not "occupying" the garbage truck at the time of the accident, so as to be eligible for UIM coverage. Defendant's policy defined "occupying" to mean "in, upon, getting in, on, out or off" of the insured vehicle.

Nina, as personal representative of Justin's estate, thereafter brought this action for recovery of UIM benefits. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that there was no evidence that Justin was "occupying" the garbage truck when he was struck. The trial court denied defendant's motion, holding that there was a genuine issue of material fact on that issue.

Defendant later learned that the Pratts had filed a Chapter 7 bankruptcy petition on the same day as Justin's accident. Defendant again moved for summary disposition, arguing that Nina was not the real party in interest to bring the action and that she was judicially estopped from pursuing a claim for UIM benefits because she failed to disclose the claim in the bankruptcy proceeding. The trial court permitted Nina to amend the complaint to substitute the bankruptcy trustee as the party plaintiff.

The trial court ordered a bifurcated trial, and a jury trial was held on the issue of whether Justin was occupying the garbage truck at the time of the accident. The jury found that Justin was occupying the truck within the meaning of defendant's policy. The parties thereafter stipulated to plaintiff's damages in the amount of the policy limit of $1,000,000, less any available setoffs to which defendant was entitled. The trial court held that defendant was entitled to a setoff of $20,000, the amount of Eggleston's liability insurance coverage, and awarded plaintiff a judgment of $980,000. Although plaintiff had moved for case evaluation sanctions, the trial court denied the motion because MCR 2.403 had been amended to eliminate case evaluation sanctions and the court determined that application of the amended rule would not work an injustice upon plaintiff.

This appeal and cross-appeal followed.

## II. SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

Defendant argues that the trial court erred by denying its motion for summary disposition under MCR 2.116(C)(10). Defendant contends that there was no competent evidence that Justin was occupying the garbage truck at the time of the accident, and that plaintiff's theory of the case was mere speculation. We disagree.

We review de novo a trial court's decision on a motion for summary disposition. *Eplee v City of Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). A trial court may grant summary disposition under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any

material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Lowrey*, 500 Mich at 7, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (quotation marks omitted).

We review de novo issues of contract interpretation, such as the interpretation of insurance policy language. *Fuller v GEICO Indemnity Co*, 309 Mich App 495, 498; 872 NW2d 504 (2015).

" 'Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient.' " *Ahmed v Tokio Marine America Ins Co*, 337 Mich App 1, 7; 972 NW2d 860 (2021), quoting *McNeill-Marks v MidMichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016). Our Supreme Court, in discussing evidentiary requirements in the context of a theory of causation, has stated:

> [A] causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. [*Skinner v Square D Co*, 445 Mich 153, 164-165; 516 NW2d 475 (1994).]

The Court quoted with approval 57A Am Jur 2d, Negligence, § 461, p 442, which states:

> All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty. Absolute certainty cannot be achieved in proving negligence circumstantially; but such proof may satisfy where the chain of circumstances leads to a conclusion which is more probable than any other hypothesis reflected by the evidence. However, if such evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses, negligence is not established. [*Skinner*, 445 Mich at 166-167.]

The *Skinner* Court concluded that "causation theories that are mere possibilities or, at most, equally as probable as other theories do not justify denying defendant's motion for summary judgment." *Id*. at 172-173; see also *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234; 964 NW2d 50 (2020); *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113; 839 NW2d 223 (2013).

In this case, it was plaintiff's theory that Justin was "occupying" the garbage truck at the time of the accident within the meaning of defendant's policy because he had either climbed onto

the truck moments before the collision, or he was in physical contact with the truck in the process of getting onto it when he was struck by the pickup truck. This theory was not mere speculation, but was supported by circumstantial evidence, such as testimony regarding Justin's positioning and location on the hood of the pickup, above the wheel and against the "A-post,"[3] immediately after the accident. Jeffrey Simpson, a Columbia Township assistant fire chief who responded to the scene, testified that Justin was "sitting on that panel above the wheel," with his back against the A-post. His feet were about three feet above the ground. Scott Cota, the Columbia Township Fire Chief, also testified that Justin's back was against the passenger-side A-post. Gootee testified that Justin was "laying up on the fender area." and "perched up" on the pickup, although he also stated that Justin "wasn't up on the actual hood."

This witness testimony established a genuine issue of material fact as to whether Justin was positioned at the level of the pickup truck's hood, with his feet off the ground, at the time of impact. If a jury were to credit the testimony that Justin was found in a position with his feet off the ground immediately after the accident, it could reasonably conclude that at the time Justin was hit by the pickup truck, his upper torso must have been above the hood of the pickup, i.e., that he was standing on or climbing onto the garbage truck. We agree with the trial court that there was sufficient circumstantial evidence that Justin was "occupying" the garbage truck to properly submit the issue to the jury.

Neither party introduced expert opinion evidence on accident reconstruction to explain the mechanics of how a collision moves a body. Although defendant notes that the only eyewitness testimony before the accident indicates that Justin was standing on the ground just before the collision, the circumstantial evidence of Justin's location and positioning immediately after the accident was sufficient to establish a genuine issue of material fact whether Justin was no longer on the ground when he was struck, and whether it was more probable that he had climbed onto or was stepping onto the truck when the pickup truck struck him. *Lowrey*, 500 Mich at 7. Accordingly, the trial court did not err by denying defendant's motion for summary disposition under MCR 2.116(C)(10). *Id*. at 1.

Relatedly, defendant also argues that the trial court erred by denying its motion for reconsideration of the order denying defendant's motion for summary disposition. "Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted." MCR 2.119(F)(3). "The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). This Court reviews for an abuse of discretion a trial court's decision denying reconsideration. *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 540; 687 NW2d 143 (2004). A trial court abuses its discretion when its decision "is outside the range of reasonable and principled outcomes." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016).

---

[3] Scott Cota, the Columbia Township Fire Chief, defined the term "A-Post" as used by firefighter and emergency personal as meaning "the post that holds the front windshield in."

Defendant supported its motion for reconsideration with additional photographs of the accident it had obtained from the Michigan State Police. Defendant argued that these photographs showed that the only step onto the truck was on the passenger side, and that the driver's side running board was damaged in the collision. Moreover, defendant argued that the witnesses' testimony did not support the inference that Justin was found on top of the hood of the pickup truck immediately after the accident. The trial court did make the statement that the additional evidence rendered plaintiff's theory of the case less convincing than it originally believed. Nonetheless, it concluded that reconsideration was not warranted.

We conclude that the trial court did not abuse its discretion by denying reconsideration. *Ensink*, 262 Mich App at 540. In the first instance, the trial court's statement concerning the strength of plaintiff's case appears to have been based in part on its misunderstanding that witnesses had described the location of Justin's body as lying on the "A frame of the passenger side tire," which the court believed was "part of the front end suspension" and located "well under where the hood would be." As stated, the witnesses did not refer to the location of Justin's body as being on the "A-frame," but on the "A-post," which Cota described as "the post that holds the front windshield in." None of the witnesses described the A-post as part of the suspension or located beneath the hood, or as part of the vehicle described by the trial court.

Moreover, the additional photographs provided by defendant showed the right front corner of the pickup truck in contact with back end of the running board on the driver's side of the garbage truck. The photos did not negate the possibility that Justin may have been on or in the process of climbing onto that running board, or otherwise attempting to climb into the truck, when he was struck. More significantly, the photographs did not contradict plaintiff's theory that Justin's location on the hood of the pickup truck indicated that he was not on the ground at the moment of the collision. Similarly, distinctions among the witnesses' descriptions of Justin's positioning and location, and the meaning of their descriptive terms "perched," "cocooned," and "incorporated," were factual issues to be explored at trial. They did not establish that there was no genuine issue of material fact regarding whether Justin was occupying the garbage truck at the time of the collision. Because defendant failed to demonstrate that the trial court's order denying summary disposition was based on palpable error, the court did not abuse its discretion by denying defendant's motion for reconsideration. *Id*.

## III. DEFENDANT'S SECOND MOTION FOR SUMMARY DISPOSITION

Defendant also argues that the trial court erred by denying its second motion for summary disposition, on the grounds that (1) Nina was not the real party in interest and (2) Nina should be judicially estopped from pursuing a claim for UIM benefits because that claim was not disclosed in the bankruptcy petition. We disagree.

## A. REAL-PARTY-IN-INTEREST

We review de novo whether a plaintiff is a real party in interest. *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). We review for an abuse of discretion a trial court's decision whether to allow a substitution of parties. *Mather Investors, LLC v Larson*, 271 Mich App 254, 260; 720 NW2d 575 (2006).

"An action must be prosecuted in the name of the real party in interest . . . ." MCR 2.201(B). Because a debtor's interest in a cause of action constitutes an asset for purposes of bankruptcy, the debtor has a duty to disclose that interest to the bankruptcy court. *Spohn*, 296 Mich App at 481-482. Upon filing for bankruptcy, "the right to pursue causes of action formerly belonging to the debtor vests in the trustee for the benefit of the estate." *Young v Indep Bank*, 294 Mich App 141, 144; 818 NW2d 406 (2011) (quotation marks and citation omitted). Thereafter, "[t]he debtor has no standing to pursue such causes of action." *Id*. (quotation marks and citation omitted).

Defendant argues that Nina was not the real party in interest to bring this action as personal representative of Justin's estate because she and Justin filed a petition for bankruptcy on the day of Justin's accident. Therefore, the UIM claim was "always part of the Pratts' bankruptcy estate, Nina "lacked *any* interest in the UIM claim 'from the get-go,' " and any right to pursue a claim for UIM benefits belonged only to the bankruptcy trustee. Defendant further argues that the bankruptcy trustee could not properly be substituted as a plaintiff because, for the same reason, Nina never had an interest in the claim and therefore had "nothing to 'transfer' to the trustee." Nina conceded that at some point she was not the real party in interest, but argued that this defect could be remedied by amending the complaint under MCR 2.118(A)(2) and substituting the bankruptcy trustee as the party plaintiff. See also *Wormsbacher v Seaver Title Co*, 284 Mich App 1, 8; 772 NW2d 827 (2009) ("Because a court should freely grant leave to amend a complaint when justice so requires, a motion to amend should ordinarily be denied only for particularized reasons.").

We note at the outset that defendant's position is inconsistent and self-contradictory. In its initial appellate brief, defendant detailed the timeline of the underlying accident as having occurred approximately an hour *before* the filing of the bankruptcy petition. In defendant's reply brief, however, defendant errantly cites to its opening appellate brief for the proposition that the accident had occurred *after* the bankruptcy filing and that Nina therefore had no interest to transfer to the bankruptcy trustee.

MCR 2.202(B) governs motions to substitute a party when there has been a transfer or change of interest, and provides:

> If there is a change or transfer of interest, the action may be continued by or against the original party in his or her original capacity, unless the court, on motion supported by affidavit, directs that the person to whom the interest is transferred be substituted for or joined with the original party, or directs that the original party be made a party in another capacity.

It is true that the bankruptcy petition was filed before Nina filed this action. However, defendant acknowledges that "[w]here the issue involves substitution of a party rather than addition of a party, courts look to whether 'the original plaintiff had, in any capacity, *either before or after commencement of the action*, an interest in the subject matter of the controversy." *Tice Estate v Tice*, 288 Mich App 665, 669; 795 NW2d 604 (2020) (emphasis added). Based on defendant's own timeline of the events (in which the accident preceded the bankruptcy filing), Nina (the original plaintiff) had an interest in the subject matter of this controversy for a period of time, albeit brief, before the commencement of the action. Therefore, she did have an interest to

transfer to the bankruptcy trustee upon the trial court's determination under MCR 2.202(B) that it was appropriate to substitute the bankruptcy trustee as the named plaintiff.

It is also true that substitution of a bankruptcy trustee for a plaintiff by way of amending the pleadings is inappropriate when the statutory limitations period of the original plaintiff's claim has expired. See *Miller v Chapman Contracting*, 477 Mich 102, 104; 730 NW2d 462 (2007). However, defendant does not assert that plaintiff's motions to substitute the trustee and amend the complaint occurred outside the limitations period for the UIM claim. Although defendant states that the claim is subject to the three-year limitations period for wrongful-death claims, see MCL 600.5805(2), the nature of plaintiff's claim is one for breach of contract, which is subject to a six-year limitations period, MCL 600.5807(9), because it was based on an alleged right to UIM benefits under defendant's insurance policy. See *Rory v Continental Ins Co*, 473 Mich 457, 465-466, 703 NW2d 23 (2005) (noting that the "rights and limitation of [UIM] coverage are purely contractual"). In any event, the underlying accident occurred on September 18, 2018. The bankruptcy court reopened the bankruptcy case on May 21, 2021, and the trial court in this case allowed Nina to amend the complaint to name the bankruptcy trustee as the party plaintiff on May 27, 2021. The amended complaint naming the bankruptcy trustee as the party plaintiff was filed on June 21, 2021, well before even the three-year limitations period would have expired. Accordingly, the trial court did not err by granting the motion to amend and substituting the bankruptcy trustee as the plaintiff, thereby curing any real-party-in-interest defect.

## B. JUDICIAL ESTOPPEL

Defendant also argues that plaintiff should be judicially estopped from pursuing the claim for UIM benefits because Nina did not disclose this claim in her bankruptcy petition. We disagree. We review de novo the trial court's application of an equitable doctrine, such as judicial estoppel. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012).

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn*, 296 Mich App at 480 (quotation marks and citation omitted). Michigan has adopted the "prior success" model of judicial estoppel, in which "a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994), quoting *Lichon v American Univ Ins Co*, 435 Mich 408, 416; 459 NW2d 288 (1990).

In this case, although the UIM claim was not disclosed in the initial bankruptcy petition, as explained earlier, the bankruptcy case was reopened and the bankruptcy trustee was substituted as the party plaintiff. In *Stephenson v Malloy*, 700 F3d 265 (6th Cir, 2012), a bankruptcy trustee was substituted for the original plaintiff in an automobile negligence lawsuit. The defendants later moved for summary judgment because the original plaintiff had not included the lawsuit as an asset or as an action to which he was a party when filing his Chapter 7 bankruptcy petition. *Id*. at 266-267. The trial court granted the defendant's motion for summary judgment on the ground that the plaintiff was judicially estopped from pursuing the negligence claims. *Id*. at 267. However, the United States Court of Appeals for the Sixth Circuit reversed on the ground that

judicial estoppel did not apply to the trustee, who was not responsible for the nondisclosure, noting that

> Defendants allege no wrongdoing by the trustee; it was [the original plaintiff] who omitted the lawsuit from the bankruptcy filings. The trustee's pursuit of this action is therefore not contrary to a position he previously asserted under oath. . . . Accordingly, we adopt the reasoning of the Fifth, Tenth, and Eleventh Circuits and find that [the original plaintiff's] failure to disclose his claims does not bar the trustee from pursuing them. [*Id*. at 272.]

*Stephenson* is fully on point with the case before us, and we reach the same conclusion here.[4] Additionally, the bankruptcy court's reopening of the case negates the element of Nina receiving a benefit from nondisclosure of the claim, providing further support for the trial court's decision not to apply judicial estoppel. Although defendant argues that *Stephenson* is distinguishable because the trial court here improperly substituted the bankruptcy trustee as the plaintiff, we have already concluded that the trial court did not err by allowing the complaint to be amended to substitute the bankruptcy trustee as the party plaintiff. Accordingly, the trial court properly denied defendant's motion for summary disposition. *Spohn*, 296 Mich App at 479.

## IV. LAY WITNESS OPINION TESTIMONY

Defendant also argues that the trial court erred by allowing Gootee to offer his opinion that Justin could not have been standing on the ground when he was hit. We disagree.

We review for an abuse of discretion a trial court's decision to admit or exclude evidence, but review de novo preliminary legal questions affecting the admissibility of evidence. . *Nahshal*, 324 Mich App at 710.

At trial, Gootee testified as follows:

> Yeah, . . . chances are if you're on top of a crumpled hood between the two objects that's where you were when the two objects come together.

> You know what I'm saying? If he's on top of that fender . . . he didn't hit him and he flew up in the air and landed there, he was in between the two objects that that's where he was. You know what I'm saying?

> *Q*. Yes. I mean–

> *A*. I mean, I don't know how to describe that, but I mean it's–

> *Q*. He couldn't have been standing on the ground?

---

[4] Although decisions of lower federal courts are not binding on this court, they may be persuasive. *Wormsbacher v Seaver Title Co*, 281 Mich App 1, 5; 772 NW2d 827 (2009).

*A*. It had to go like that.

* * *

He was on the ground when I went by him. But my point is is [sic] if he was on the ground when them two trucks come together, if you look at the – the – the can and the truck, half his body would have been under that truck.

Does that make sense? I'm – I'm looking at this picture, that picture right there, if he was in between them two trucks when they came together half his body would have been under the back of that garbage truck. He wasn't under that garbage truck, he was on top of that F-150. Does that make sense?

Defendant argues that Gootee was not qualified to offer an opinion regarding Justin's location at the time of the collision. The trial court ruled that the testimony was admissible as lay witness testimony under MRE 701.

Gootee was a lay witness who was not qualified as an expert. MRE 701 permits a lay witness to offer testimony in the form of opinions or inferences if those opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." This court has "liberally applied MRE 701 in order to help develop a clearer understanding of facts for the trier of fact." *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod on other grounds 433 Mich 862 (1989). This has included lay witnesses' estimates of speed and position drawn from their observations of accidents and their aftermath, provided that these opinions were based on reliable conclusions that could be drawn by people in general, without the need for specialized training or knowledge. See, e.g., *Chastain v Gen Motors Corp (On Remand)*, 254 Mich App 576, 579-580; 657 NW2d 804 (2002); *Richardson v Ryder Truck Rental, Inc*, 213 Mich App 447, 455; 540 NW2d 696 (1995); *Mitchell v Steward Oldford & Sons, Inc*, 163 Mich App 622, 629; 415 NW2d 224 (1987).

In this case, Gootee's testimony was based on his observations of Justin's positioning and location in relation to the involved vehicles immediately before and after the collision. He viewed photographs showing the involved vehicles in relation to each other, admitted that he saw Justin standing on the ground immediately before the collision, and described how Justin was positioned and sitting on the hood area of the pickup truck immediately after the collision. On the basis of these observations, Gootee testified that he did not believe that Justin could have been lifted to the level of the pickup truck's hood if he had still been on the ground where Gootee had seen him standing shortly before the collision. Gootee did not claim any expertise in biomechanics or accident reconstruction, and plaintiff did not argue that his opinion was based on any specialized knowledge. But because Gootee had observed Justin both before and immediately after the accident, his testimony was helpful to assist the jury in determining where Justin may have been standing at the moment of impact, and his opinion that Justin could not have still been on the ground when he was struck was rationally based on his own perceptions of Justin's location before and after the accident in relation to the involved vehicles. Defendant had the opportunity to cross-examine Gootee and elicit his admission that he had no expertise on the subject. The trial court did not abuse its discretion by allowing Gootee's testimony under MRE 701. *Nahshal*, 324 Mich App at 710.

## V. DIRECTED VERDICT

Defendant argues that the trial court erred by denying its motion for a directed verdict at the close of plaintiff's proofs. We disagree.

This Court reviews de novo a trial court's decision on a motion for a directed verdict. *Abke v Vandenberg*, 239 Mich App 359, 361; 608 NW2d 73 (2000). This Court must view "the evidence, as well as any legitimate inferences, in the light most favorable to the nonmoving party and decide whether a factual question exists about which reasonable minds might have differed." *Id*.

Defendant's argument is the same as that raised in its first motion for summary disposition and its motion for reconsideration, namely, that there was insufficient circumstantial evidence that Justin was occupying the garbage truck at the time of the collision without resorting to impermissible conjecture. As stated, we agree that a genuine issue of material fact existed regarding whether Justin was "occupying" the garbage truck at the time of the accident. This question was properly within the province of the jury to resolve, and the trial court did not err by denying defendant's motion for a directed verdict. *Id*.

## VI. PLAINTIFF'S CROSS-APPEAL

On cross-appeal, plaintiff argues that the trial court erred by denying plaintiff's motion for case evaluation sanctions. We agree.

We review de novo a trial court's decision whether to award case evaluation sanctions. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). We review de novo a trial court's interpretation of court rules. *Reitmeyer v Schultz Equipment & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999). We review for an abuse of discretion a trial court's decision regarding whether the application of a new court rule would "work injustice" under MCR 1.102. *Id*. A trial court abuses its discretion when it selects an outcome falling "outside the range of reasonable and principled outcomes." *Hecht*, 499 Mich at 604.

MCR 2.403 governs the case evaluation procedure. Prior to its amendment in 2022, MCR 2.403(O) provided in relevant part:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation. [MCR 2.403(O)(1), prior to amendment effective January 1, 2022.]

Substantial amendments to MCR 2.403 went into effect on January 1, 2022. Relevant to this appeal, the amendment removed subsection (O) in its entirety; what were commonly known as "case evaluation sanctions" are no longer available under the current version of the rule.

MCR 1.102 provides:

-11-

These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

Therefore, the general rule when a court rule is amended is to "apply the newly adopted court rules to pending actions unless there is a reason to continue applying the old rules." *Reitmeyer*, 237 Mich App at 337 (quotation marks and citation omitted). "However, an injustice is not present merely because a different result would be reached under the new rules. Rather, a new court rule would 'work injustice' where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rule." *Id*. (citations omitted). This Court noted in *Reitmeyer* that "MCR 1.102 focuses on 'injustice' in the context of whether changes in rules in the midstream of the legal process have operated unfairly on one of the parties." *Id*. at 340. However, "the exception for 'injustice' must not be read too broadly, such that it encompasses nearly every case where the new and old court rules would affect a case differently." *Id*. at 339. Therefore the "injustice" exception to MCR 1.102 "must be applied narrowly and with restraint." *Id*. at 603.

Under the facts of this case, we conclude that the trial court erred by determining that the post-amendment version of MCR 2.403 applied to plaintiff's request for case evaluation sanctions. The record shows that the litigation was essentially completed while the prior version of MCR 2.403(O) was in effect. The parties participated in case evaluation in February 2021, and the evaluation panel issued an award of $500,000 for plaintiff. On March 15, 2021, the parties were notified that plaintiff had accepted the award and defendant rejected it. The case was tried in December 2021, resulting in a verdict in which the jury determined that Justin was occupying the garbage truck at the time of the accident. On December 14, 2021, the parties stipulated that plaintiff was entitled to damages of $1,000,000, less any available set offs to which defendant was entitled. On December 30, 2021, plaintiff filed a motion for entry of judgment and requested case evaluation sanctions. However, judgment was not entered until June 9, 2022, when the court awarded plaintiff $980,000 but denied plaintiff's request for case evaluation sanctions.

The record shows that plaintiff's rejection of the case evaluation award occurred nearly nine months before the new rule came into effect. The trial was conducted in its entirety under the previous version of the rule, and plaintiff submitted a request for judgment and case evaluation sanctions before the rule's amendment. MCR 2.403 was amended while plaintiff was waiting for the trial court to formally enter a judgment and rule on the motion for case evaluation sanctions, which the trial court did not do until nearly six months after plaintiff filed it. Prior to the amendment, both parties accepted the risk of case-evaluation sanctions by agreeing to a jury trial, and made their strategic decisions before and during litigation under the rubric of the prior version of the rule. Under these circumstances, it would have "operated unfairly" for either of the parties to be denied case-evaluation sanctions merely because the ministerial act of entering a judgment on the verdict had not occurred before the rule change. *Reitmeyer*, 237 Mich App at 340. Therefore, under these particular circumstances, we conclude that the trial court abused its

discretion by holding that the current version of MCR 2.403(O) applied to defendant's claim.[5] *Id.* at 337.

## VII. CONCLUSION

In the main appeal, we affirm the trial court in its entirety. In plaintiff's cross-appeal, we vacate the portion of the trial court's May 24, 2022 opinion denying plaintiff's claim for case evaluation sanctions, and we remand for consideration of that claim under the prior version of MCR 2.403. Having prevailed in full, plaintiff may tax costs. MCR 7.219(A)(1). We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Stephen L. Borrello
/s/ Kathleen A. Feeney

---

[5] Our decision is not based on the recent statement in *RAD Constr, Inc v Davis*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket Nos. 361177 & 363142); slip op at 8, that "the trial court had no authority to sanction RAD after January 1, 2022." *Id.* In that case, the litigation leading to the request for case evaluation sanctions continued long into 2022; the defendant did not obtain a more favorable verdict until April 12, 2022. *RAD Constr* cited *Reitmeyer* and concluded that there was "no reason to apply the old rule in this case." *RAD Constr*, ___ Mich App at ___; slip op at 8. In context, the statement in *RAD Constr* concerning the trial court's authority was based on this Court's conclusion that the new version of MCR 2.403 applied, and that the trial court therefore had no authority under the post-amendment version to award case evaluation sanctions. It was not a statement of a bright-line rule that under no circumstances may a trial court award case evaluation sanctions after January 1, 2022.